Fawcett v. Woods.

FAWCETT *v.* WOODS.

Where it is clearly apparent, that a verdict was not the result of a free, sound, and unbiassed exercise of judgment, on the testimony submitted, and that manifest injustice will result, if judgment is rendered upon such verdict, the appellate court will grant a new trial, although a new trial may have been refused by the court below.

Where in an action to foreclose a mortgage given to secure the payment of two promissory notes, the defendant admitted the execution of the

Fawcett v. Woods.

notes and mortgage, and alleged that said notes were given as part consideration for certain parcels of land purchased by him of plaintiff, for which she, with her husband, made him a deed, containing full covenants of warranty; that said plaintiff was not lawfully seized, nor had she title to one parcel of said real estate; that proceedings had been commenced against him, by the rightful owner thereof, to evict him therefrom; that he had been compelled to yield to such paramount title, and surrender the possession thereof, to the person rightfully entitled thereto, which title was adverse to that of plaintiff; that the value of the parcel from which he was evicted, was two thousand dollars; that it was worth that sum at the time he purchased of plaintiff; and that it was estimated at that sum at the time he purchased from plaintiff—all of which was denied by the replication; and where on the trial of the cause, after proof of the other necessary matters, the defendant introduced three witnesses, one of whom estimated the value of said parcel of land, at $900 to $1050—another, at $1125—and the third, at $1200—and also estimated the value of the other tracts of land, which evidence was not contradicted by the plaintiff, nor the witnesses impeached; and where the jury rendered a verdict for the full amount of the notes, less the amount of a certain payment, and the further sum of about $440, for the breach of the plaintiff's covenants in her deed, which verdict the court refused to set aside; *Held*, That the verdict was contrary to the evidence, and should have been set aside.

Where in an action between the vendor and vendee of real estate, conveyed by deed of warranty, to recover a part of the purchase money, the vendee alleged that he had been evicted from a portion of the land by title paramount, and claimed to deduct from the purchase money, the value of the land from which he had been so evicted; and where the court instructed the jury, "that if the person who purchased the paramount title, after the conveyance from the plaintiff to the defendant, purchased by collusion with the defendant, and with the intention on the part of the defendant, thereby to defraud the plaintiff, then the defendant was not entitled to a deduction, on account of the failure of title, from the amount sought to be recovered by the plaintiff in this action;" *Held*, 1. That the instruction was erroneous; 2. That if the vendee, by himself, or through another, for his benefit, extinguished the paramount title by purchase, his damages would be limited to, or measured by, not the value of the land, but by the amount reasonably paid for that purpose, provided it did not exceed the purchase money; and that proof that the amount paid was reasonable, must come from the vendee; 3. That if the paramount title had not been purchased by the vendee, then his measure of damages would be, the value of the land to which the title had failed, as shown by the consideration money and interest.

*Appeal from the Johnson District Court.*

SATURDAY, DECEMBER 26.

This action was brought to recover upon two promissory notes for one thousand dollars each, and to foreclose a mortgage given to secure the same. Defendant answers, admitting the execution of the notes and mortgage, as averred in the petition. He further answers, that said notes were given as part of the consideration for certain parcels of land purchased by him of plaintiff, for which she, with her husband, made to him a deed, covenanting therein, that she was lawfully seized—had good right to sell—against incumbrances—and to warrant and defend the same against all persons whomsoever. He then proceeds to state, that said plaintiff was not lawfully seized, nor had she title to one parcel of said real estate, so sold; that proceedings had been commenced against him by the rightful owner thereof, to evict him therefrom; and that he had been compelled to yield to such paramount title, and surrender the possession thereof to the person entitled thereto — which title was adverse to that of plaintiff. He further avers, that the value of the parcel from which he was so evicted, was two thousand dollars; that it was worth this amount, at the time he purchased of plaintiff; and that this was what it was estimated at, in their trade. These averments are all denied by plaintiff in her replication. There was a trial by jury, and a judgment for plaintiff, for the amount of said notes and interest, less the amount of a certain payment made on the same, and the further sum of about four hundred and fifty dollars, for the breach of plaintiff's covenants contained in her deed, as to said parcel of real estate, mentioned in defendant's answer. Motions in arrest, and for a new trial, were made and overruled. Judgment on the verdict, and defendant appeals. The other material facts are stated in the opinion of the court.

*Edmonds & Ransom*, for the appellant, contended: 1. The covenant of seizin was broken as soon as made. 3 Hill, 134; 1 Const., 509; 4 Conn., 495; 11 Ill., 229; 22 Vt., 98. 2. The damages to which the appellant was entitled, was the consideration of the land, to which the title had failed. Sedg. on Dam., 164; 4 Mass. 108. 3. As the title of only a portion of the premises failed, the measure of damages, was the proportionate value of the part to which the title failed. Sedg. on Dam., 171; 4 Mass., 349. 4. It is now well settled, on the one hand, that the grantee may voluntarily surrender the land, to a claimant having a good title, without suit, or he may stand a suit; and in both cases, be entitled to damages, and in the latter case, to costs also. 2 Hilliard on Real Estate, 404; Sedg. on Dam., 158; 5 Hill., 599; 4 Mass., 348; 17 Ib. 586. Such ouster need not be by process or law. 5. The instruction is erroneous. It is a charge upon facts not found. It misstates the law. 9 Ala., 179; 4 Hill., 345; 5 Ib., 599. This case comes within the rule laid down in *Jourdan* v. *Reed*, 1 Iowa, 135; 3 G. & W. on New Trials, 824.

*James D. Templin*, for the appellee, cited as to new trials, the following: *Johnson et al* v. *United States*, Morris, 423; *Fanning* v. *McCraney*, Morris, 398; Ib. 15; 28 Maine, 379; 18 Conn. 300; 4 Harrington, 252; 3 Gilm., 202; 3 Barr, 50; 4 Blackf. 369; 1 B. Monr., 45; 5 Humph., 476; 5 Iredell, 545; 13 Conn., 453; 16 Ib., 450.

WRIGHT, C. J.—The point principally relied upon by appellant is, that the verdict was contrary to and against the evidence, and that a new trial should have been granted for this cause by the court below. The whole testimony is before us. The main feature of the controversy, on the trial, seems to have been, what was the relative value of the tract of land, from which defendant was evicted, at the time of his purchase; or, in other words,

what was it estimated to be worth in the sale from plaintiff to defendant. Defendant purchased four pieces of land of plaintiff, the whole consideration being twenty-five hundred dollars; five hundred of which was paid in hand, and the notes sued on were given for the balance. As to three parcels, there is no controversy. As to the fourth, it is conceded that the title failed, and that plaintiff was not lawfully seized, nor did she have a legal right to convey the same at the time of the sale to defendant. Did the jury err, under the evidence, in their estimate of the amount which defendant was entitled to have deducted from his notes, for this failure of title, and these breaches of the covenants contained in plaintiff's deed? is the question now presented for our consideration.

In the case of *Jourdan* v. *Reed*, 1 Iowa, 135, it was held, that applications for a new trial, for the cause here assigned, " are peculiarly addressed to the sound discretion of the court trying the cause. Yet that it is a legal discretion, and must be legally and properly exercised. Where the mind is brought inevitably to the conclusion, that the verdict was not the result of a free, sound and unbiassed exercise of judgment, on the testimony submitted, and that manifest injustice will result, if judgment is rendered upon such verdict, it would be the right and duty of the court below, to grant a new trial; and where such a case is made clearly apparent to this court, a new trial will be ordered, though refused by the court below. To hold otherwise, would be to take from the judge an essential power in the administration of the law, and make the verdict of a partial and corrupt jury, final and conclusive." And to the same effect, are the following cases: *Freeman* v. *Rich*, 1 Iowa, 504; *Stewart* v. *Ewbank*, 3 Ib., 191; *Motts* v. *Usher & Thayer*, 2 Ib., 82. And these cases, we believe, contain the substance of the rule upon this subject, as found in most of the authorities. 3 Grah. & Wat. on New Trials, 1204–5 and note.

The only evidence in this case, as to the value of the land, was given by three witnesses introduced by defend-

ant.  They appear to testify with candor and intelligence. One of them estimates the value at from $900 to $1050; another one places the value at $1126; and the third considered it worth $1200.  They each place an estimate upon the other tracts sold.  And on all their estimates, they confine themselves to the value at the time of the sale, and in view of the amount agreed to be paid therefor by defendant.  As to the aggregate value, they differ from $100 to $200—the witness who puts the lowest estimate upon the tract in controversy, placing the highest value on some of the others.  No effort was made to contradict or impeach these witnesses, nor was there any attempt to show that they were mistaken, or that the true and proper value was less than that testified to by them.  Under such circumstances, we are constrained to believe, that the verdict rendered was not the result of a free and unbiased exercise of judgment on the part of the jury; or, if so, that they have made a manifest mistake, to the prejudice of defendant's rights.

This cannot, with justice, be said to be a case where the verdict is rather against the weight of evidence, but one where it is unsupported by evidence—where it is in no manner warranted by the proof.  To our mind, it is a case of clear and palpable error on the part of the jury.  If the testimony was contradictory—if any fairly successful effort had been made to impeach the witnesses offered on the part of defendant—or if it appeared that the verdict was in accordance with the justice of the cause—or that a second trial would or should result in a like finding—we might feel disinclined to disturb the verdict.  Nothing of this kind appears, however.

This case cannot be said, with propriety, to belong to that class of cases where the amount of the plaintiff's or defendant's damages, are peculiarly left to be determined by the sound discretion of the jury.  In actions sounding in *tort*, a wide latitude is appropriately given to juries, and courts will seldom interfere with a verdict, because it is excessive, or because, in the opinion of the judge, it

may be less than he would have given. Such verdicts have, in some instances, been set aside, but only in the most extreme cases. Here, however, the amount to which defendant was entitled, was susceptible of adjustment and ascertainment by a fair, and not very difficult computation. The figures to form the basis of the calculation, were presented in an intelligent and tangible form. From these figures, they could not, with fairness, have allowed defendant much of anything below $900, nor beyond $1200. He was not allowed, however, but about one-half of the lowest estimate placed upon the land. In this finding, they decided palpably and clearly contrary to the evidence submitted.

But it is said that these witnesses, in their description of the land — the improvements thereon, and its location — show that their estimates were too high, and that the jury were, from these considerations, justified in finding as they did. This position, we do not think is supported by the evidence. The witnesses give a somewhat full description of the tract of land; state that most of it is under fence and in cultivation, and was at the time of the sale; and that it had upon it a dwelling house, a good well, and was upon the main road leading from Iowa City to the city of Dubuque—that road running through it, and being fenced on each side. The land was entered in 1843, and had some improvements upon it before that time. And, indeed, we may say, that there was no one circumstance detailed by the witnesses, from which the jury could reasonably or justly infer, that they had erred in their estimates. It is true that they differed in their opinions as to its value, but the lowest estimate exceeds two-fold the amount allowed by the jury. Had the jury more nearly approximated even the lowest sum stated, the defendant would have less ground for complaint. But under the circumstances detailed by the witnesses, aside from their opinion of the relative value of the land, there was nothing to justify the jury in finding so far below the minimum value so fixed.

But a farther argument is made upon these circumstan-

ces.   It seems that W. H. Woods, the son of defendant, purchased the land of one Jewett, who purchased from the United States; and it was to this paramount title of the son, that the defendant was compelled to, or did yield.   Plaintiff claims that between the father and son there was collusion; that the son bought for the father; that he gave but three hundred dollars; and that this being all that was paid to purchase in the outstanding adverse title, defendant could only claim that amount as the measure of his damages.   This is the substance of plaintiff's argument, not stated, perhaps, in the manner presented by counsel; but, in effect, this is the position.   Did the testimony sustain this view, there would be no doubt as to the rule which should be applied.   If the defendant, by himself, or through another, for his benefit, extinguished the paramount title by purchase, his damages would be limited to, or be measured by, not the value of the land, but the amount reasonably paid for that purpose, provided it did not exceed the purchase money; and the proof that it was reasonable must come from him.   *Brandt* v. *Foster*, *ante* 287 and the authorities there cited.

The testimony, however, in no manner tends to support this position.   It is true that the deed from Jewett to W. H. Woods, shows that the consideration was three hundred dollars, but there is no testimony in the remotest degree, connecting defendant with such purchase.   The son was introduced as a witness, and swears unequivocally that he paid for the land with his own money; that he bought it for himself; that defendant knew nothing of it; furnished no part of the money; and that he instituted proceedings against defendant, under the title he so acquired.   This was the only testimony upon this subject.   If the jury concluded that there was a fraudulent combination and collusion between the witness and defendant, such conclusion was unwarranted, having no semblance of testimony to support it.   Whatever the truth may be in the premises, it is certain that under the proof made, there was no ground for

believing that defendant, either by himself or through another, had acquired the outstanding title.

The defendant further assigns for error, the giving of the following instruction: "That if W. H. Woods purchased the paramount title, after the conveyance by plaintiff to defendant, by collusion with the defendant, and with the intention, on the part of the defendant, thereby to defraud the plaintiff, then defendant was not entitled to a deduction, on account of the failure of the title, from the amount sought to be recovered by the plaintiff in this action." It is manifest that, if there was error in this instruction, it did not prejudice defendant, for the jury did allow him a portion of the amount claimed, and could not have gone upon the ground that the fraud and collusion were proved. It is proper to say, however, (as the case must be remanded for a second trial,) that the instruction should not have been given. The defendant had a right to protect himself, by buying in the outstanding title.

This purchase he might make through his son, or any other person. And, though it may have been arranged between them, that the son should purchase, and compel the father to yield to his superior title, so as to avail him, (the defendant,) on the trial of this case, still, he would be entitled to deduct from the notes, the amount reasonably paid for such purchase, to the extent before stated. If such paramount outstanding title had not been purchased, then the measure of defendant's damages would have been the value of the land, as shown by the consideration money and interest; and plaintiff could not complain, if, by collusion or fraud between the father and son, this title was obtained, and a less amount than such value should, as a consequence, be deducted. It was not correct, therefore, to instruct the jury, that, under the circumstances supposed in such instruction, defendant would be entitled to no deduction from the amount of the notes. Of course, it is understood, that the son must have acquired the paramount title, and the title to which defendant surrendered was actually superior to that of his grantor. By his surrender,

of course, he assumes the whole burden of proof, and if he fails in this, it is immaterial what was paid for such supposed better title, or by whom it was paid.

We conclude that the verdict was contrary to, and against, the evidence, and that the court below erred in refusing a new trial. The judgment will be reversed, and a trial *de novo* awarded.