GABRIEL STRAND, Appellee, v. GRINNELL AUTOMOBILE GARAGE Co. ET AL., Appellants.

Personal injury: NURSE HIRE. The plaintiff in a personal injury case is entitled to recover the value of services of an untrained nurse, although the service was rendered by his wife.

Evidence: REMOTENESS. Testimony of the condition of the highway three hundred feet from the place where an automobile accident occurred is objectionable because too remote and indefinite; and its exclusion was not erroneous, especially as it was covered by other evidence.

Special interrogatories: REFUSAL TO SUBMIT. Refusal to submit requested interrogatories is not erroneous where, so far as proper, they are covered by those given by the court on its own motion.

Automobile accident: CARE: NEGLIGENCE: INSTRUCTION. The driver of a restive horse, in failing to signal the chauffeur to stop an approaching automobile until the horse can pass, does not relieve the latter of the duty to exercise ordinary care to avoid an accident and to stop the machine, if such precaution appeared to be reasonably necessary; nor is he under all circumstances required to give the signal to free himself from contributory negligence.

New trial: MISCONDUCT OF JURY. The court's discretion in denying a motion for new trial based on misconduct of the jury will not be disturbed on appeal, where there is evidence in resistance to the motion which will support the ruling.

Automobile accident: NEGLIGENCE: EVIDENCE. In an action to recover for injuries caused by the fright of plaintiff's horse while on a public highway through alleged negligent operation of an automobile, the evidence is reviewed and held to sustain a finding of defendant's negligence.

Same: CONTRIBUTORY NEGLIGENCE. Under the evidence plaintiff is shown to have been in the exercise of such care of his horse in meeting an automobile as to take the question of his contributory negligence to the jury.

*Appeal from Poweshiek District Court.*—HON. W. G. CLEMENTS, Judge.

THURSDAY, OCTOBER 24, 1907.

ACTION at law to recover damages for injuries received by plaintiff in an accident which it is claimed was due to the negligence of the defendant, its agents and servants, in operating an automobile upon a public highway in Jasper county. Trial to a jury, verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*J. H. Patton* and *J. P. Lyman,* for appellants.

*Boyd & Bray,* for appellee.

DEEMER, J.— That plaintiff received personal injuries due to a runaway of his horse, caused by its being frightened by an automobile ·operated by defendants, is conceded, and the only questions of fact in the case, aside from the amount of plaintiff's damage, are the negligence of the defendants, and the contributory negligence, or rather the want of it, on plaintiff's part. The negligence charged in the petition is: " That the machine was run at a high rate of speed, and plaintiff, a man of sixty-eight years of age, while driving on the highway of Jasper county with a single horse and top buggy was met by said automobile. That at this place the road was dangerous because of a high embankment on the right of said plaintiff. That there was plenty of room for the defendants to turn out to their right and avoid any injury to plaintiff. That on meeting the plaintiff the machine was going at a high rate of speed, and defendants failed, neglected, and refused to stop or slacken its speed, but continued to operate the machine at a dangerous rate of speed past the plaintiff's horse and buggy. That the defendants failed, neglected, and refused to turn out to the right enough to allow the plaintiff room to pass without accident. That plaintiff's horse became frightened and unmanageable, which was known to said defendants, or in the

exercise of ordinary care, prudence, and discretion should have been known to defendants. That plaintiff's horse, because of its fright at the automobile, overturned the plaintiff's buggy, injurying him by breaking one rib, butting and injuring plaintiff about the head, right hip, right shoulder, and arm, and by bruising and injuring both his legs and his back." Plaintiff also pleaded freedom from contributory negligence. Defendants' answer was practically a general denial and a plea of contributory negligence on plaintiff's part. Defendants also pleaded that the automobile was not running at a greater rate of speed than provided by law, that the person in charge thereof was complying with all the provisions of the law, and that defendants did nothing save what they had a right to do. Upon these issues the case was submitted, resulting in a verdict and judgment for plaintiff. The errors assigned, some fourteen in number, relate to rulings on testimony, failure to submit certain special interrogatories, failure to give certain instructions asked, and failure to sustain defendants' motion for a new trial based on misconduct of the jury and insufficiency of the testimony to sustain the verdict. The instructions given are not complained of, and the propositions most relied upon are that the verdict is contrary to the evidence, that the jury was guilty of such misconduct as vitiates the verdict, and that the court was in error in refusing to submit the special interrogatories asked.

I.   As to rulings on evidence. Plaintiff was permitted to prove, over defendants' objections, that his wife nursed him during his illness, and the value of the service of an untrained nurse. Defendants contend that

1. PERSONAL INJURY: nurse hire.

this was error, for the reason that the wife was compelled by reason of her marital relations to perform these services, and that plaintiff is not entitled to recover anything therefor. There is no merit in this connection. *Beringer v. Dubuque Co.*, 118 Iowa, 135; *Varnham v. City*, 52 Iowa, 698.

A witness introduced by defendants was asked as to the condition of the highway " 300 feet east of where you saw the automobile, east of where the accident occurred."

2. EVIDENCE: remoteness.   Objection to this as immaterial was sustained. In this there was no prejudicial error. The distance was too remote from the scene of the accident to render the condition of the highway at that place a material factor; and, moreover, the question itself is rather vague, for it does not specify the place with any degree of certainty. Again, the matter was fully covered by other testimony in the case.

II.   Defendants submitted some special interrogatories which the trial court refused to propound; but on its own motion the court submitted four, which, as we think, fully

3. SPECIAL IN-TERROGATORIES: refusal to submit.   covered the case and called for ultimate facts, rather than the evidence to sustain such facts. The interrogatories submitted were as follows: " Int. 1. Do you find that just before the injury complained of the plaintiff exercised ordinary care and prudence such as a man of ordinary care and prudence would have exercised under like or similar circumstances to protect himself from injury? Int. 2. Was the plaintiff, in view of the circumstances, careless and negligent in the way of handling and endeavoring to manage his horse? Int. 3. Did the person in charge of the automobile fail to exercise ordinary care and prudence such as a man of ordinary care and prudence would have exercised under like or similar circumstances? Int. 4. Do you find that the person in charge of the automobile exercised ordinary care and prudence such as a man of ordinary care and prudence would have exercised under like or similar circumstances? " Those submitted by defendants, in so far as they called for ultimate facts, did not differ materially from the ones given, and, in so far as they were in the nature of a cross-examination and called for evidentiary, rather than ultimate facts, they

were properly refused. *Butterfield v. Kirtley,* 115 Iowa, 208; *Morbey v. Railroad,* 116 Iowa, 84.

III.  Regarding the instructions asked by defendants and refused, the trial court gave the law substantially as announced in defendants' first, second, and sixth requests,

4. AUTOMOBILE ACCIDENT: care: negligence: instruction.

and in so doing committed no error, although it did not use the exact language of the requests. *Farrell v. City,* 129 Iowa, 447. The fifteenth request reads as follows:

> The person in charge of the automobile had a right to expect, when approaching the plaintiff's horse and buggy, that plaintiff would make such effort as a man of ordinary intelligence and prudence would make to manage and control his horse, and that, if plaintiff feared that his horse would be frightened, he would by raising his hand, or in some other way, indicate his desire to have the automobile come to a stop, and if plaintiff did not use such care in the management of his horse as a man of ordinary intelligence and prudence would have used, and if he did not in any way indicate a desire that the automobile should stop, then the plaintiff is not entitled to recover, and your verdict should be for defendants.

This does not announce the law and was properly refused. Even though plaintiff made no signal to the driver of the automobile to stop, this did not relieve him (the driver) from the duty of ordinary care to avoid an accident. If the driver saw that plaintiff's horse was frightened, he was required to exercise ordinary care to prevent an accident, although he received no signal from the driver and owner of the horse to stop his machine. Nor is the driver of a horse required under all circumstances to give a signal to stop in order to free himself from the charge of contributory negligence. *Christy v. Elliott,* 216 Ill. 31 (74 N. E. 1035, 1 L. R. A. (N. S.) 215, 108 Am. St. Rep. 196), and cases cited. In lieu of the instruction asked, the trial court gave the following:

In reference to the defendant stopping the automobile, you are instructed that the law regulating the use and operation of automobiles upon the highways provides that any person operating a motor vehicle shall, at the request or on the signal by putting up the hand from a person riding or driving a restive horse or other draft or domestic animals, bring such motor vehicle immediately to a stop, and, if driving in the opposite direction, remain stationary so long as may be reasonable to allow such horse or animals to pass. And the operator and occupants of any such motor vehicle shall render necessary assistance to the party in charge of such horse or other draft animal in so passing. There is no claim that plaintiff signaled for the automobile to stop by raising his right hand, or that he requested the same to be stopped. And if you find that it was not apparent to the operator of the automobile as an ordinary cautious and prudent man that the plaintiff's horse was frightened, or by the exercise of ordinary care could not have seen or known that the plaintiff's horse was frightened and likely to become unmanageable, then, under such circumstances, the operator of the automobile would be warranted in proceeding with due caution. And if he did so proceed with due caution, and an accident resulted, under such circumstances, then the defendants would not be liable.

But if you find that, when the automobile approached the plaintiff, the defendant Dickerson saw, or by the exercise of ordinary care should have seen, or known, that the plaintiff's horse was frightened at the automobile and was becoming unmanageable, then it was the duty of the defendant Dickerson to exercise ordinary care under such circumstances, and stop the automobile, if necessary to do so to avoid injury to the plaintiff, notwithstanding the plaintiff did not signal by raising his hand or request the defendant Dickerson to stop.

This correctly stated the law as we understand it:

IV.   In defendants' motion for a new trial, misconduct of some of the jurors is relied upon.   The showing made for defendants is as follows:   "After said jury had retired to their room to consider upon a verdict, and while said jury was deliberating upon a verdict, and before a verdict had been agreed

5. NEW TRIAL:
misconduct
of jury.

upon, one of the jurors, viz., G. C. Wykel, stated in my hearing, and in the presence and hearing of other jurors, while the said jurors were considering the rate of speed the automobile in question was being operated at the time of the accident in evidence and the distance in which it could have stopped, and while said jurors were especially considering the testimony of defendants' witnesses upon the matter, that he (Wykel) knew from personal experience and observation that an automobile could be stopped in much shorter distance than that testified by the defendants' witnesses, that he (Wykel) saw an automobile driven by one John Hall, in the town of Montezuma, Iowa, that the automobile in which he (Hall) was riding was at the time going down hill like the dickens and at a lively speed, and when going at that speed was stopped in a distance of four feet." Plaintiff filed counter affidavits from other jurors to the effect that they heard no such statement from juror Wykel. The juror who made the affidavit on which defendants rely also filed an affidavit for plaintiff, in which he said that the statement of juror Wykel had no influence with him. Plaintiff also presented an affidavit from juror Wykel in which he stated: " That I have read the affidavit made by the said W. H. Davidson in support of the motion of defendants for a new trial, and know the contents thereof; that, during the discussion of the evidence of the case by the jury, the juror Davidson expressed himself as not believing that the defendant Dickerson had testified as a witness on the former trial of the case, that at the time of the accident, the automobile driven by him could have been stopped within a distance of three feet, and stated that he did not believe it could be done; that, in reply to said Davidson, I said that I believed that it could be done, and that I had seen an automobile operated by one John Hall, while being driven at a lively rate of speed, brought to a stop within a few feet, possibly not more than four or five; that such statement was made by me only in reply to the statement made by juror

Davidson, and the same was not made or intended as evidence in the case and was not so received by any member of said jury; that, at the time of the making of such statement by me, the jury had unanimously agreed in favor of a verdict for the plaintiff, and at the time of the making of such statement the jury were only engaged in a discussion of the amount of damages which the plaintiff had sustained and the amount for which a verdict should be returned in his favor." Defendants moved to strike these counter affidavits from the files, but their motion was overruled, and of this complaint is made. . That such affidavits are competent in support of the verdict, see *Davis v. Huber Mfg. Co.*, 119 Iowa, 56; *Caldwell v. Nashua*, 122 Iowa, 179, and cases cited. In the light of these affidavits *pro* and *con*, it is manifest that the trial court did not abuse its discretion in holding that there was no such misconduct as justified it in setting aside the verdict. *Montgomery v. Hanson*, 122 Iowa, 222. The trial court may have found that the statement made by juror Wykel was after all the jurors had agreed upon a verdict for plaintiff, that it was made to juror Davidson alone, and that none of the jurors were influenced thereby. There was testimony to support such a conclusion, and, in support of the court's ruling, we are, upon appeal, in duty bound to conclude that the trial court found these facts to be true. That being the case, there was no such misconduct as would justify a new trial. *Tschohl v. Ins. Ass'n*, 126 Iowa, 211; *State v. Olds*, 106 Iowa, 110; *State v. Baughman*, 111 Iowa, 71; *State v. Crouch*, 130 Iowa, 478. ,

V. The principal contention made by defendants is that the verdict is without support in the evidence and is the

6. Automobile Accident: negligence: evidence.

result of passion and prejudice. The trial court gave the following instructions, in addition to those already quoted:

If you find from the evidence, guided by these instructions, that the plaintiff was passing along the public highway driving a horse and buggy, and that he was exercising

reasonable and ordinary care and caution in so doing, and that the defendant company, by its agent, Dickerson, approached plaintiff on said highway at a high rate of speed, and in such approach with the automobile the plaintiff's horse became frightened at the automobile, and that when approaching the plaintiff upon said highway the said Dickerson saw, or by the exercise of ordinary care should or could have seen, or known, that the automobile or his manner of running or operating the same was frightening plaintiff's horse, and rendering the same unmanageable, and said Dickerson thereafter negligently continued to operate the automobile toward the plaintiff's horse and failed to exercise ordinary care in operating the automobile, as alleged, after he saw, or by the exercise of ordinary care should or could have seen, or known, that the plaintiff's horse was frightened and becoming unmanageable, and that thereby the plaintiff was thrown from the buggy and injured, and that the defendants' negligence was the direct and proximate cause of the plaintiff's injury, then the plaintiff should recover in such sum as you find under the instructions hereinafter given.

The defendants had a legal right to operate their automobile upon the highway, and if you find from the evidence that, at the time of the alleged injury to plaintiff, the defendants operated their automobile with such care as an ordinarily prudent and cautious man would use under like circumstances, having a regard to the use of the highway at the time, and having regard to the situation of the plaintiff as he was then in, then there can be no recovery. And if you find that the said Dickerson approached the plaintiff and his horse while driving on the public highway, and that he sounded his horn as a warning and slackened the speed of the machine, or he stopped the automobile as soon as he reasonably could when he noticed, or could have noticed by the exercise of ordinary care, that the plaintiff's horse was frightened, or that he (Dickerson) in what he did do acted in a reasonable and prudent manner and with ordinary care with due regard to the rights of the plaintiff, and that Dickerson was not driving in an unreasonable, careless, and negligent manner, then the plaintiff cannot recover. And this is true although you may find that the plaintiff's horse became frightened and unmanageable and ran away and injured the plaintiff.

These instructions were not excepted to and are not now complained of, and in this connection we have to consider, not where the preponderance of the evidence lies with reference to the issues thus presented, but was there any substantial testimony in support of plaintiff's claim? A careful consideration of the testimony leads us to the conclusion that there was. Plaintiff testified:

As I started east, the horse became frightened, and just about the time he reached this curve in the road he jumped the bank. The automobile was so close to my horse that he thought he was going to run over him. The horse started slow at first, and then he saw the automobile and jumped around and went ahead. I went about 30 feet after leaving Mr. Quam before meeting the automobile. The horse was jumping, but the reins were not out of my hands. The automobile was going faster than any horse can trot or run, and the automobile frightened my horse. The automobile was five or ten feet east of the horse when it jumped the bank, still coming fast, keeping to the traveled track, and not turning out, as there was plenty of room to do. Had the automobile turned out to the north, I would have had room between that and the bank of the south side to have driven through. At the point where I was injured there was no room for my horse to go between the automobile and the bank.

Another witness testified that when the automobile was three hundred feet away the horse became frightened, and that the persons in the automobile could have seen it. Another, that the automobile traveled the beaten track, and did not turn out; that it came at full speed, and did not slacken; that it could have been turned out; and that if it had been there would have been room to drive through between it and the embankment. The case was twice tried, and on the second trial defendants and their witnesses did not give the same testimony that they did on the first one. The jury may have disbelieved defendants' witnesses, who thus contradicted themselves, and if it did we must on this

appeal concur in this view. There was enough testimony to show, although it was contradicted, that the accident occurred at a dangerous place in the highway for passing plaintiff's horse and buggy; that the automobile was driven at a high rate of speed; that it did not turn out of the beaten track in the road so as to allow plaintiff room to pass or handle his horse with safety, that the horse became frightened when the machine was 300 feet away, and that it was not stopped until after the horse had frightened and upset the buggy in which plaintiff was riding. Under such a state of facts, we would not be justified in setting the verdict aside upon the grounds contended for by appellant.

The question of plaintiff's contributory negligence was for the jury. Under the testimony the jury may have found that plaintiff was in the exercise of all the care required of him, although he gave no signal for defendants to stop the machine. Plaintiff did not, it is true, expect his horse to be frightened, as he had passed another auto just a short while before he met the one which caused the accident. He was trying to find a safe place to pass the machine, and was exercising proper care of his horse for his own safety. It is not enough for us to say that we should have arrived at a different conclusion from that found by the jury. If the verdict has substantial support it must stand. *Roe v. McCaughan,* 113 Iowa, 274. That there is such support for the verdict returned in this case is manifest.

7. SAME: contributory negligence.

Finding no prejudicial error, the judgment must be, and it is, *affirmed*.