J. J. BECKER, Appellee, v. INCORPORATED TOWN OF CHURDAN, Appellant.

**EVIDENCE: Parol as Affecting Writing—Custom and Usage—Plead-**
1 **ing.** Parol evidence is admissible without pleading to show that, by usage and custom, certain words and phrases employed in a written contract have a special meaning in the business with ref-

erence to which the contract is made. So held as to the clause, "complete piped well," in a contract for the construction of a well.

**CONTRACTS:** Construction—Province of Court and Jury. When controversy exists whether certain words or phrases used in a written instrument have acquired a particular meaning in a particular business, it is proper to require the jury to determine the sense in which such words or phrases were used.

**NEW TRIAL:** Conduct of Bailiff—Unauthorized Statements to Jury. Misconduct of a bailiff without an affirmative showing of prejudice is not ground for a new trial. *Held,* certain jesting remarks of a bailiff to some of the jury as to the time they would be kept together in the absence of an agreement were not sufficient grounds for a new trial.

**NEW TRIAL:** Conduct of Jury—Unwarranted Discussion. The conclusion of the trial court on conflicting testimony as to whether the jury indulged in unwarranted discussion and statements, or was otherwise guilty of misconduct, is conclusive on the appellate court.

**NEW TRIAL:** Newly Discovered Evidence—Diligence. Newly discovered evidence without a showing of diligence in discovering it is not sufficient to justify a new trial. So held where the newly discovered evidence was either from those (a) who were witnesses on the former trial, or (b) who were present on the former trial and referred to by witnesses as having knowledge of the controversy.

**NEW TRIAL:** Newly Discovered Evidence—Documentary Evidence. The discovery of documentary evidence, fully covered by secondary evidence on the former trial, is not sufficient to justify a new trial.

**CONTRACTS:** Performance—Notice—Oral or Written. Oral notice of a matter pertaining to the performance of a contract is sufficient, in the absence of a provision to the contrary.

**WITNESSES:** Cross-Examination—Limitation. Prejudice may not be predicated on a limitation placed on the cross-examination of a witness (a) when the matter excluded was not cross-examination, and (b) when the matter sought to be elicited (assuming it to be cross-examination) was fully brought out at a later stage of the trial.

**APPEAL AND ERROR:** Parties Entitled to Allege Error—Receiving Evidence Without Objection. Acquiescing in the reception of evidence precludes subsequent objections to the retention thereof.

*Appeal from Greene District Court.—*M. E. HUTCHISON,
Judge.

TUESDAY, APRIL 4, 1916.

ACTION against defendant for the contract price or reason-
able value of sinking a well for the defendant town.   The
defense was that the well was constructed under a written
contract; that plaintiff did not comply with the terms of this
contract or complete a well in substantial compliance with
his agreement.   Defendant also pleaded that, by special agree-
ment between the parties, a certain phrase used in the contract
meant that the well should be piped from top to bottom with
standard iron pipe.   This was denied by plaintiff, and he
specially pleaded that the work was done according to the
terms of the agreement.   On these issues, the case was tried
to a jury, resulting in a verdict and judgment for plaintiff,
and defendant appeals.—*Affirmed.*

*A. D. Howard* and *Church & McCully,* for appellant.

*Seneff, Bliss & Witwer,* for appellee.

DEEMER, J.—Although the record is very large, consist-
ing of something like 527 pages of printed matter, the ultimate
questions are few in number, and might well have been pre-
sented in from 150 to 200 pages.

On the 7th of October, 1912, the defendant town entered
into a contract with plaintiff whereby plaintiff undertook to
drill and complete a well for the town at a point to be
selected by the town.   The contract provided:

"Said well to be 8 inches at the top and continued as
such until bed rock is encountered, but in no case less than
100 feet, and not less than 6 inches in diameter at the bottom
of the well.   In case second party is unable to complete said
well so specified because having encountered bed rock at not
less than 100 feet, but should bed rock be encountered at a

greater depth than 100 feet, then second party shall be allowed to enlarge size of well and pipe to 10 inches in diameter at the top, but in no place less than 6 inches in diameter. Party of the second part agrees to furnish a complete piped well with sufficient water in same that will stand the test of any four-inch cylinder pump with a continual full flow for 10 hours, said pump to be furnished by first party, said test to be satisfactory to first party. Said test to be made by second party, without compensation. Second party agrees to complete well by January 15, 1913, and in case said well is not completed by this date, this contract is null and void, and first party has not obligated themselves to second party. It is further agreed that second party is to furnish all material and pipe except sand point, if one is needed, which is to be placed by second party, and complete well in a workmanship-like manner. All pipe used in the above described well to be standard pipe. First party agrees to pay to second party $3.25 per lineal foot for the eight-inch well and in case it becomes necessary to enlarge to 10 inches at the top first party agrees to pay $4.00 per lineal foot when completed and accepted by first party.''

Defendant contends that, by reason of a conversation had between the parties before and at the time of the signing of the contract, the term ''complete piped well'' meant that the well should have been piped from top to bottom with iron piping. This, plaintiff denied. He also claimed that, according to custom and usage and the understanding of the trade, the term used in the contract meant no more than that iron piping should be used where necessary to keep out surface water or seepage, and that piping should not be used in going through solid rock, and that piping such as defendant insists upon would have destroyed the usefulness of the well. It is practically admitted that the well was not constructed according to defendant's contention; and as it was to be drilled and piped according to the terms of a written contract, plaintiff,

in order to recover the contract price, was required to show substantial compliance with the terms of the contract on his part. The trial court correctly instructed that he could not recover on *quantum meruit;* and about the only issue submitted to the jury was the proper interpretation to be given the contract. Appellant's counsel assign 97 errors said to have been committed by the trial court; but they confine their arguments to 8 main propositions. They first say that the contract itself calls for a well completely piped from top to bottom with standard iron pipe, and that the trial court should have so instructed the jury. Abandoning this proposition for the moment, they insist that, by reason of prior and contemporaneous agreements and understandings between the parties, the contract should be so construed, and they introduced testimony to substantiate the contention. Adopting this view, the trial court instructed the jury that it was for it to decide whether or not there was such a prior or contemporaneous understanding or agreement, or whether the defendant was led to believe from the prior negotiations between the parties that the well should be piped from top to bottom, and directed the jury that, if it found either proposition to be true, then the verdict should be for defendant. The plaintiff denied that he said or did anything to lead the defendant to so believe, and also averred that, according to use and custom among well diggers in the locality, the terms used in the contract with reference to iron piping meant no more than that it should be used when and where necessary to prevent the inflow of surface water, caving of the well, etc.; and that a well piped from top to bottom, as defendant claims this one was to have been, would be ineffective and useless. This issue was also submitted to the jury, and defendant's main complaint is that the testimony on these points was inadmissible because plaintiff did not plead usage or custom, and that if it had, such testimony was inadmissible because contradicting the terms of the written agreement.

I.   The first proposition which arises on the appeal is the admissibility of oral testimony as to custom and usage and in explanation of the term, "complete piped well," there being no pleading of usage or custom or that the terms used were technical ones having a definite meaning among well borers and diggers.

1. EVIDENCE: parol as affecting writing: custom and usage: pleading.

It will be noted that the phrase, "complete piped well," is not clear to the ordinary mind.   What is a complete well, piped?   Is it the equivalent of a well completely piped?   Surely the terms are not equivalent.   One means a complete well piped and the other, a completely piped well.   In view of this distinction, it is manifest that the term used may have a technical signification among well diggers due to usage and custom, and that testimony of such usage or custom or terminology may be received, not for the purpose of varying or contradicting the contract itself, but explanatory of the term used and identifying the subject matter of the contract.   Such testimony is admissible without being pleaded; and it was competent for plaintiff to show without any pleading that such a construction of the contract as defendant was insisting upon would defeat the very objects and purposes of the well, in that it would prevent the flow of water therein and make it impossible for the well to meet the tests required by the contract itself.   There is no real divergence of authority upon the proposition that such usage or custom may be shown, and that it need not be specially pleaded. See *Wilson v. Delaney,* 137 Iowa 639; *Thayer v. Smoky Hollow Coal Co.,* 121 Iowa 121; *Coulter Mfg. Co. v. Fort Dodge Grocery Co.,* 97 Iowa 616; *Wood v. Allen,* 111 Iowa 97; *Sherwood v. Home Savings Bank,* 131 Iowa 528; *Brody v. Chittenden,* 106 Iowa 524.   In *Wilson's* case, *supra,* it is said:

"Passing to the other point, it may be conceded that the expression 'stock cattle' is not one carrying universal meaning in the sense that necessarily there is thereby presented the same thought in the same way to the minds of all men;

but it is matters of uncertainty in the terms, stipulations and conditions of the contract, and not matters of mere definition, that come within the specific performance rule. And where, as here, parties contract with reference to cattle, and in doing so make use of the expression 'stock cattle,' and no mistake is alleged, it must be presumed to have been their mutual intent that their expression should be given the meaning common to the understanding of cattle men in general. And, in such view, it cannot be said that by using the expression the parties have involved themselves in any uncertainty as to the terms, etc., of their contract. The trouble is one of definition. alone. And, as related to the situation in hand, upon definition depends no more than the identification of the subject matter of the contract. It follows that there is involved simply an inquiry into the technical or special meaning of the expression used among those who deal in cattle. * * * 'Parol evidence is always admissible * * * in order to connect the description with the thing intended, and thereby to identify the subject matter, and to explain all technical terms or phrases used in a local or special sense.' ''

Authorities from other states announce the same rule. *Globe Ins. Co. v. Moffat Co.,* 154 Fed. 13; *Arkadelphia Lumber Co. v. Asman* (Ark.), 107 S. W. 1171; *Breen v. Moran* (Minn.), 53 N. W. 755.

If such testimony be offered to add to or subtract from a contract or to vary its terms, and it is not merely explanatory in character, doubtless a pleading is necessary; but not so in such cases as the one we have here.

II. It is said that the trial court erred in not instructing the jury in the first instance as to the meaning of the contract as a matter of law, and then leaving it to the jury to say, under all the circumstances, whether or not, in view of all the testimony, that was the intention of the parties. The general rule, of course, is that the construction of a contract is a matter of law for the court, and not of fact for a

2. CONTRACTS: construction: province of court and jury.

jury. But, like all rules, it has its exceptions and, in view of the issues tendered here, we think there was no error.

The questions naturally arise: What should the court have said regarding the contract? Should it have told the jury that it meant that the well should be piped from top to bottom with standard iron pipe, in the face of testimony that such a well would not and could not have met the tests required by the contract itself? Or should it have said, as a matter of law, that the contract did not in terms require that the well should be completely piped; but that, if the parties during the negotiations agreed that it should be so piped, and used this phrase as expressive of their desires and purposes, then the jury should find that the well was not constructed in accord with the terms of the contract, and plaintiff should not recover? As a matter of fact, in view of the conflicting testimony, the trial court left it to the jury to say what the parties meant by the term a "complete piped well," in view of all the other provisions of the contract and the testimony adduced pro and con, and the jury found specially, in answer to a special interrogatory, that the plaintiff furnished and completed a well for defendant sufficient in capacity to furnish a continual flow of water for ten hours by the pump furnished by defendant.

We see no error in the instruction given on the construction of the contract of which defendant may justly complain. 2 Elliott on Contracts, Secs. 1564, 1565; *Brown v. M'Gran*, 10 L. Ed. (U. S.) 550 (14 Peters 479) ; *Ginnuth v. Blankenship* (Tex.), 28 S. W. 828; *Coquillard v. Hovey* (Nebr.), 37 N. W. 479. Moreover, the defendant asked instructions to the effect that the question of the construction of the contract was for the jury, and it is in no position to complain.

III. Many of the instructions given by the court are challenged largely because, standing alone, they were erroneous. Perhaps some were incomplete in themselves; but counsel must not forget the rule that all the instructions are to be taken

and construed together; and if, so construed, they are complete and not contradictory, and none of them are affirmatively erroneous to such an extent as that they could not be cured by subsequent ones without producing a conflict, they should stand. The trial court fairly summed up the entire matter in its 17th instruction, reading as follows:

"Plaintiff claims that he constructed and finished in workmanlike manner the well in question, and that it was six inches in diameter at the bottom; that it was cased with pipe in the manner and at all places necessary to permanently prevent all caving and to keep out all foreign and undesirable matters; that it had therein sufficient water to stand a continuous ten-hour test with a continual flow of water during the test, the pump that was furnished by defendant being operated to its substantial full capacity. If you should find from the evidence that these are facts, then you are told that plaintiff had constructed the well in accordance with the terms of the contract and is entitled to recover in this action, providing you find that under the terms of the contract that the well was not to be piped from the top of the well to its bottom."

This was in entire harmony with the other instructions, and there was no conflict. The burden of proving compliance with the terms of the contract in all its parts was properly placed upon the plaintiff by several of the instructions given; and the real issues of fact between the parties were sharply defined in the instructions, and the jury could not have been misled thereby. This same thought is an answer to the complaint made of the court in refusing instructions asked by the defendant. In so far as these were correct, they were given in substance, if not in terms, by the court in its charge. It is useless to set them out *in extenso*. We have already referred to them in substance, and the exact points made are met by the prior suggestions in this opinion.

IV. Misconduct of the jury and of the bailiff in charge

thereof was made part of the grounds of the motion for a new
trial.   The misconduct of the bailiff is an alleged statement
made by him to the foreman of the jury to the
effect that they, the jury, would be kept from
Saturday night, the time when the inquiry
was made of the bailiff, until Monday, unless
they agreed upon a verdict.   The bailiff admits that he laugh-
ingly made such a remark to some member or members of the
jury; but it does not appear that he pretended to speak with·
authority from the court, and no such statement was made
by the court or judge at any time, nor was it authorized by
either.   Some of the jurors say that this, in part at least,
induced them to agree upon a verdict which they would not
otherwise have rendered.   The jurors who made affidavits do
not agree who it was to whom the bailiff spoke.   Others, and
a majority, say that the remark, if made, was not made to
the foreman, and they deny having heard that any such
statement was made or repeated in the jury room.   The trial
court was justified in finding that the remark, if made, was
nothing more than a jest, and that it had no influence upon
the jury.   In such cases, it is incumbent on the defeated party
to show not only misconduct of the officer in charge, but also
that prejudice resulted therefrom.   *Purcell v. Tibbles,* 101
Iowa 24; *Brossard v. Chicago, M. & St. P. R. Co.,* 167 Iowa
703.   The trial court was justified in denying the motion on
this ground.

3. NEW TRIAL:
conduct of
bailiff: unau-
thorized state-
ments to jury.

The alleged misconduct of the jury consists of certain
statements said to have been made by the jurors in their
discussion of the case in the jury room after retiring to
deliberate upon their verdict, to the effect
that the town rejected the well because it was
not in a proper location and required the
hauling of coal some distance, whereas it
might have been located near the railway; that the town
council had refused plaintiff's request on Saturday before the
trial to make another test of the well; that some of the jurors

4. NEW TRIAL:
conduct of
jury: unwar-
ranted discus-
sion.

were not satisfied with the verdict, but thought from the court's instructions that plaintiff was entitled to all that he sued for, or nothing, and, believing that he was entitled to something, they finally agreed to the verdict. Seven jurors joined in an affidavit to the effect that someone mentioned during the deliberations of the jury that the town was not satisfied with the location of the well, but that this was not stated in connection with the case or as a matter of personal knowledge of the juror, and was not considered as having any bearing upon the controversy; that no reference was made during the discussion of the test which plaintiff offered to make just before the trial; but that the reference was to a proposed test in January preceding the trial, when plaintiff appeared with his counsel before the town council. This last was a proper matter for consideration. From other affidavits, it appears that there never was any disagreement between the jurors as to the right of the plaintiff to recover, and that the sole matter of difference was over the amount of his recovery, a large majority of the jury at all times favoring a verdict for the full amount claimed. Most, if not all, of the matters insisted upon inhered in the verdict and cannot be considered. *Clark v. Van Vleck*, 135 Iowa 194, 200. The trial court was justified in finding that there was no such misconduct on the part of any of the jurors as would be ground for a new trial. Its conclusion on conflicting testimony is binding upon us. *Montgomery v. Hanson*, 122 Iowa 222; *State v. Baughman*, 111 Iowa 71; *Baxter v. Cedar Rapids*, 103 Iowa 599; *State v. Steidley*, 135 Iowa 512; *Strand v. Grinnell Auto. Garage Co.*, 136 Iowa 68; *State v. McClure*, 159 Iowa 351; *Hoyt v. Hoyt*, 137 Iowa 563; *State v. Steen*, 125 Iowa 307; *Rosche v. Bettendorf Axle Co.*, 168 Iowa 461.

V. Another ground of the motion for a new trial was newly discovered testimony. All of the testi-

5. NEW TRIAL: newly discovered evidence: diligence.

mony which it is claimed was newly discovered came, except in two instances, from persons who were used as witnesses upon the

trial, and no excuse is shown for not inquiring about the matters which it is now said they would testify to. As to the exceptional cases, one was a man who was present during the whole trial, and who was referred to by other witnesses as being present when a particular transaction occurred. No such showing of diligence is made as the law requires in ascertaining what his testimony would be. The other person who was not present shows that his testimony, if received, would be cumulative only. For these reasons, it is apparent that the motion was properly overruled on this ground.

Another piece of testimony claimed to have been newly discovered was a rough pencil sketch of a preliminary contract between the parties. It was claimed on the trial, and testimony was offered to the effect, that this sketch had

6. NEW TRIAL:
newly discov-
ered evidence:
documentary
evidence.

been lost, and secondary evidence was introduced as to its contents. It is not claimed that this sketch when it turned up contained anything other or different from what the witness said it did, and as appellant had the benefit of parol testimony as to the contents of the instrument because of its loss, its discovery after trial does not amount to newly discovered testimony, unless it is clearly shown that there is something in the original different from what was testified to, which would call for another kind of a verdict. The following authorities support our decision on this point: *Rockwell v. Ketchum,* 149 Iowa 507, 515; *Trimble v. Tantlinger,* 104 Iowa 665; *Marengo Savings Bank v. Kent,* 135 Iowa 386.

VI. A great number of errors are assigned on the admission and rejection of testimony. We have had great difficulty in ascertaining just what the record is on many of these matters, because of the fact that, while the

7. CONTRACTS:
performance:
notice: oral or
written.

abstract is very full, appellees have filed an amended abstract of 71 pages, correcting the record in a very substantial manner and putting a new version on some of the rulings. This amended abstract is not denied save in one particular by appellant;

and the labor of comparing the two abstracts and making the necessary corrections should not have been imposed upon us. If any mistakes were made, they should not be charged to us. We do not deem it important to refer to many of these rulings, as they relate in the main to matters already discussed. Complaint is made because plaintiff was permitted to testify that he gave verbal notice to the mayor of the town and to one of its council of the test which he proposed to make of the well under the terms of the contract. The contract does not provide the kind of notice, and a verbal one to the mayor would be sufficient.

Complaint is made of a ruling denying defendant the right upon cross-examination of plaintiff to show what the mayor, Hill, said to him, Becker, about the well's not going through the rock all the way after it was 8. WITNESSES: cross-examination: limitation. struck at approximately 412 feet from the surface. This was not cross-examination; and if it were, it was not at all important what the mayor said to plaintiff. The mayor was a witness for the defendant, and he was permitted to state all his knowledge on the subject, no matter how acquired.

The geological formations through which the well was driven were important, and plaintiff introduced the assistant state geologist as an expert; and having fully qualified to testify, this witness proceeded to state the 9. APPEAL AND ERROR: parties entitled to allege error: receiving evidence without objection. formations and different strata through which the well passed. As a part of his examination, a blueprint of these strata was introduced in evidence. All this without objection, although defendant's counsel subsequently lodged objections against the blueprint. There was no error of which defendant may complain. The trial court struck out a statement said to have been made by one Peck, who operated the pump when the test was being made, relative to the stroke of the machine. This may have been error; but counsel for defendant stated that the ruling was satisfactory to them, although it is true

that they afterward said, ''Give us the usual exception.'' The ruling might well have been the other way, as the statements made by a servant in the discharge of his master's duties are part of the *res gestae* and generally admissible. However, the matter was fully covered by other testimony, and the ruling seemed to be entirely satisfactory to counsel. We shall not say more. A careful examination of the record discloses no prejudicial error and the judgment must be and it is—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.