STATE OF IOWA ex rel. MILDRED PATTON, Appellee, v. CLARENCE TERPSTRA, Appellant.

JUNE 26, 1928.

*Mitchell, Files & Mulholland,* for appellant.

*V. S. White,* for appellee.

DE GRAFF, J.—The sole issue presented to the district court under the pleadings in the instant cause was to determine the paternity of a child and to fix the amount of money to be paid by the defendant in the event that the jury found that he was the father of said child. Two primary matters are involved on this appeal: (1) Whether the provision of the decree wherein the defendant was ordered and adjudged to give security for the payment of the judgment entered against him is constitutionally valid, and (2) whether the bailiff of the district court in charge of the jury in this cause was guilty of prejudicial misconduct in the particulars recited in defendant's motion for new trial. Of these in their order:

I. The specific assignment of the appellant is that Sections 12667-a40 and 12667-a41, Code of 1927, are violative of the Constitution of Iowa, to wit:

410

"No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in case of fraud * * *." Article I, Section 19.

The challenged statutes read as follows:

"The court may require the father to give security by bond with sureties, for the payment of the judgment." Section 12667-a40.

"In default of such security, when required, the court may commit him to jail. After one year the person so committed may be discharged but his liability to pay the judgment shall not thereby be affected." Section 12667-a41.

It may be observed that the judgment in the instant case did not contain an order of imprisonment. Counsel for appellant predicate the first proposition on the decision in *Holmes v. State*, 2 G. Greene (Iowa) 501. See, also, *Blackhawk County v. Cotter*, 32 Iowa 125; *State v. Shoemaker*, 62 Iowa 343.

In the *Holmes* case, supra, the judgment and decrees entered provided that the defendant give security to perform the order of the court, and in case of neglect or refusal to give said security and pay the costs of the prosecution, that he be committed to the county jail, there to remain until he should comply with the order of the court. The record in the case at bar is silent as to what the defendant contemplated doing with respect to compliance with the judgment, either in paying the sum awarded to the complainant or in furnishing security, as ordered by the court.

The position of the appellant in pressing his present contention is anticipatory. The proposition now urged is not before this court, under this record. The appellant is, in effect, asking for a declaratory judgment. It is our rule to cross the legal bridge when we reach it. We are not to be understood, however, as either approving or disapproving the decision or the reason for the decision in the *Holmes* case, supra.

II. Was the jury bailiff guilty of prejudicial misconduct? This question must be answered under statutory provisions, in the light of the facts disclosed by the instant record. The officer

 in charge of a jury "shall not suffer any communication to be made to them, or make any himself, except to ask them if they have agreed upon their verdict, unless by order of the court * * *." Section 11497, Code of 1927. After the jury has retired for deliberation, "if they desire to be instructed as to any point of law arising in the case, they may request the officer to conduct them into court, which he shall do, when the court may further instruct, which instruction shall be given in the presence of, or after notice to, the parties or their counsel." Section 11506, Code of 1927.

Two jurors gave affidavits, which were attached to the appellant's motion for new trial, in which the affirmative conduct of the jury bailiff is recited. The affidavit of Mrs. Mona Lowe, one of the jurors, stated that she was a woman past 54 years of age; that she did not change her vote until the jury had been out more than 20 hours, in a session that lasted all night; that the jury room was without heat during the night, and the atmosphere became very cold; that the jury room was without beds or comfortable chairs; that the jurors tried to find relief from the cold and to get some rest by wrapping in the mats from the floor, and lying on the table and on the floor; that, during the morning, after the all-night session, Mrs. George Lloyd became very ill; that Mrs. Lloyd asked the bailiff to take the jury to the judge for advice, but the bailiff said he did not dare do so, and further said that the jury would have to remain in session for two weeks, or until a verdict was agreed upon; that she (Mrs. Lowe) assisted Mrs. Lloyd in preparing a written message to the judge, and she asked the bailiff to convey this message to the judge; that the bailiff refused, and said that he did not dare carry any word to the judge; that she talked with the bailiff in an effort to prevail upon him to let them confer with the judge, and received a similar answer; that sometime about 10 o'clock in the morning, Mrs. Lloyd, Mrs. Lowe, and a Mr. Sloan discussed what they should do to get out of there; that each of them stated that they did not feel that the defendant was guilty, but that they were anxious to get out of there, and that they were convinced that the only relief from the conditions confronting them was a verdict of guilty; that she would never have voted guilty, except in the belief that it was the only escape from the

intolerable conditions in the jury room, "that depressed us all, and made Mrs. Lloyd very ill."

Another juror, Mrs. George Lloyd, stated in her affidavit that she is a woman past 46 years of age; that she suffers from heart trouble and high blood pressure; that, in the deliberations of the jury, the first ballot showed 6 for conviction and 6 for acquittal, and she was one of the 6 for acquittal; that the jury retired to deliberate about 2:20 P. M., on May 10, 1927, and remained out until 10:20 A. M. the next day; that the weather was cold, and that there was no heat in the jury room; that the members of the jury, herself particularly, suffered severely from the cold during the night, and by morning she had contracted a severe cold; that, after deliberating all night without changing the division of opinion,—then nine for conviction and three for acquittal,—she was so depressed and unstrung that she became faint, so she went to the bailiff and asked him to take the jury to the judge, for the purpose of asking for advice and additional instructions; that the bailiff told her that he did not dare take the jury to the judge, and that the jury must stay in session until a verdict was agreed upon; that Mrs. Lowe made a similar request of the bailiff, and received the same answer; that she then asked the bailiff to carry a message from her to the judge, stating, in effect, that the jury was unable to agree; that the bailiff refused to carry this message, and stated that the jury must remain out at least 24 to 48 hours, or until a verdict was agreed upon; that she was ill from the strain, and felt she must get out of there, and finally told the 9 members for conviction that she would change her vote, to get off the jury; that Mrs. Lowe made a similar statement, and after that they balloted; that she would never have voted guilty, or signed the verdict, but for the intolerable conditions that made her ill, and the refusal of the bailiff to convey the message to the judge or carry the message from her to the judge; that she was so tired and fully depressed that she was not entirely responsible for her actions when she voted guilty.

The bailiff filed an affidavit, in which he states that the rooms were reasonably warm; that there were no Morris chairs or beds for the jurors to rest upon; that, about 11:30 in the evening, he served a hot lunch to them; that no complaint was made to him at any time about the condition of the rooms, ex-

cept that several expressed the desire for sleep; that, about 9:30 in the morning, some of the jurors handed him an envelope, to take to the court; that the judge at that time was busy, and he did not hand it to the court; that he made no remarks to the jury of any nature whatsoever about the length of time they would be required to deliberate before they could bring in a report that they were unable to agree; that he returned the envelope to someone in the jury room, and told the juror that the judge was busy; that, about 15 minutes later, they said they had reached the verdict.

Other jurors in this case filed counter affidavits, in which it is recited that the courthouse was reasonably warm; that the discomfort that was suffered was due to the fact that the jury remained up and out all night; that there were no couches or beds upon which to lie down or sleep; that they did not hear abusive words used toward Mrs. Lloyd or Mrs. Lowe; that the final ballot was a secret ballot; and that the verdict was voluntarily signed, and without the coercion on the part of anyone, so far as the affiant knew.

The material statements made by Mrs. Lowe and Mrs. Lloyd relative to the conduct of the bailiff and his communications are not contradicted in the counter affidavits of the other jurors. The showing is ample that the bailiff did violate the mandate of the statute by making communications to certain members of the jury. We are not justified in finding that the statements, if made by the bailiff, were "nothing more than a jest, and that it had no influence upon the jury." *Becker v. Town of Churdan*, 175 Iowa 159. The bailiff failed and refused to give a message to the trial judge, and told one of the jurors making the request that the jury would have to remain in session for two weeks, or until a verdict was returned, and to the other, at least 24 to 48 hours, or until a verdict was agreed upon.

The legislature has prescribed strict regulations governing the conduct of the officer in charge of the jury. In *State v. Peirce*, 178 Iowa 417, the bailiff told the jury that the trial judge had gone to his home over Sunday, and that a resident judge had no power except to receive a verdict. It was held that this violated the statute.

We cannot escape the conclusion that the statements made by the bailiff to the two jurors in question were made, as recited

in their respective affidavits, and that it did have a controlling influence, and, in fact, a coercive influence, on these two jurors. The defendant was entitled to a verdict that is the result of an uninfluenced and unprejudiced deliberation. We are convinced, from a review of the entire record, that the defendant is entitled to a new trial. The judgment entered is—*Reversed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.