STATE OF IOWA, Appellee, v. VIOLA GALLAGHER, Appellant.

No. 46524.

DECEMBER 12, 1944.

REHEARING DENIED MARCH 9, 1945.

L. M. Hullinger, of Cedar Rapids, for appellant.

John M. Rankin, Attorney General, William F. McFarlin, Assistant Attorney General, Carl Hendrickson, County Attorney, and D. M. Elderkin, Assistant County Attorney, for appellee.

SMITH, J.— The State charged that appellant, on April 8, 1943, stole a billfold containing approximately $46 in money, the property of one Mrs. Irma Whitcomb, her close friend. On the evening of that day appellant and Mrs. Whitcomb, in company with two men, were in a taproom booth drinking and dancing from 9 or 9:30 until around midnight.

Mrs. Whitcomb had her billfold or purse in a black bag or pocketbook. Along about 11 o'clock she went to buy cigarettes and left the bag and billfold in the booth. When she returned and went to put the change back in her purse the pocketbook was there and the billfold gone. She did not remember whether she had put the billfold back in the pocketbook or had left it on top of the table.

All four of the party, including appellant, searched for the billfold and appellant claimed her billfold had also been taken. Finally, Mrs. Whitcomb announced she was going to the police station and they all went, apparently by mutual consent. When they arrived there it seems both women reported their respective losses, though Mrs. Whitcomb testified she did not remember of any complaint by appellant either at the taproom or at the police station.

Of the four in the party only Mrs. Whitcomb and one of the men testified. The other man was in service at time of trial and appellant did not testify.

At the police station it was suggested by the officers that all four be searched. All consented. Mrs. Whitcomb searched appellant and found the two billfolds in the front of her dress. One was identified by Mrs. Whitcomb as hers and it contained approximately $46. Appellant identified the other as her own.

That same night one of the officers prepared a written statement embodying the information he obtained from appellant and she signed it. The details it gave were substantially as had been testified to by the prosecuting witness and the other member of the party who testified and as we have briefly outlined. However, it contained this language:

"While we were out shopping earlier, Irma cashed a check * * * the amount of this check was $50, and knowing most of this money was in the purse I decided to take this money; I opened up Irma's purse and took a billfold which I knew contained this money and placed it inside of the front of my dress. * * * before we left the Tap Room I told Irma someone had also taken my billfold. I did this so no one would suspect me of taking Irma's money."

I. Appellant urges that the evidence was not sufficient to support the verdict of guilty. The argument is based upon some features we have not yet set out. Mrs. Whitcomb, as the State's witness, seemed more anxious to shield than to prosecute appellant. The two women were living together at the time of the trial. They wore each other's clothing, pins, and jewelry. She testified that appellant had the right of access to her pocketbook all the time; that she told appellant to watch the pocket-

book and billfold when she (witness) went out to dance; that appellant had the right to have possession of her billfold "because I told her to watch it."

Again she said:

"Viola often takes care of my pocketbook for me when we are out on parties and when we were out that night. We put our money in each other's pocketbooks; it depends on whose purse we take out * * * Viola would often take my pocketbook and keep it until we two girls would get sobered up and off of the parties. Viola had been drinking plenty that night. * * * I don't know if she was intoxicated or not, but she had had plenty to drink."

The witness apparently tries to convey the impression that appellant had the right to take possession of the billfold that night, but the conduct of both women tends to negative the existence of such an arrangement. Mrs. Whitcomb, when she discovered the billfold was missing, immediately complained of the loss, searched the booth, and finally announced she was going to the police station to report the matter. On her arrival there she did report it and later assisted the police by herself searching appellant's person. When she found the billfold inside appellant's dress she exclaimed, "Why that is my billfold."

There was not a suggestion by either woman that appellant had the right or was accustomed on such occasions to take possession of Mrs. Whitcomb's money. Both must have realized that a serious charge against appellant was implied, yet neither suggested an explanation consistent with innocence.

Appellant's own conduct and written statement are contradictory of any innocent purpose she may have had in taking the billfold. She joined in the search of the taproom booth, allowed suspicion to be directed at all members of the party, and pretended her own property had also been taken, "so no one would suspect me of taking Irma's money."

Though the evidence indicates they had all been drinking very heavily it expressly negatives intoxication.

We recognize the principle in a criminal case, where a greater degree of proof is required to convict, it is our duty more readily to inquire into its sufficiency. State v. Tomlinson,

11 Iowa 401. That the rule is different from that applied in civil cases, State v. Wise, 83 Iowa 596, 50 N. W. 59, and cited cases. See, also, State v. Carlson, 224 Iowa 1262, 1265, 1266, 276 N. W. 770. And that if the verdict is against the clear *weight* of the evidence a new trial should be granted, State v. Pilkington, 92 Iowa 92, 60 N. W. 502.

But the evidence here, unexplained, of the conduct of both appellant and Mrs. Whitcomb on the night in question is sufficient to raise a jury question. The trial court and jury saw the witnesses and were no doubt in a better position than are we to appraise the weight of the testimony.

II. There is some discussion by appellant of the statute relating to confessions. Section 13903, Code of 1939. We do not deem the statement signed by appellant as a confession. See the definition of the term ''confession'' in State v. Cook, 188 Iowa 655, 660, 661, 176 N. W. 674. Also, State v. Knowles, 48 Iowa 598; 22 C. J. S., Criminal Law, section 816. We have here a signed admission or statement, admissible in support of the charge, but not an outright acknowledgment of guilt. State v. Cook, supra.

III. One other proposition is urged by appellant as a ground for reversal. In paragraph 11 of her motion for new trial she contends that she was not legally found guilty by the jury. The argument is based on an affidavit of a juror to the effect that during all the jury deliberations until the last ballot he was voting for acquittal.

He stated that without being convinced of appellant's guilt he finally joined in the verdict of guilty: (1) because he was suffering and had been suffering pain and agony on account of the extraction of two teeth two days previously and (2) because the bailiff ''came into the jury room and * * * wanted to know if we could reach a verdict yet that night'' and ''that if we could not, the judge was going home.'' The affidavit adds that he knew the presiding judge lived at Tipton and that he (the juror) believed if the judge went home the jury would be locked up over the week end and he (the juror) realized he could not endure the pain that long.

On oral examination the juror corrects the affidavit to the effect that he was in error in saying the bailiff entered the jury

room, but that the bailiff "hollered up" from the room below, "that the court was going to leave."

The bailiff, under oath, denied saying anything except that he called the foreman out and asked him if they had reached a verdict and said the judge might want to retire. The court, on motion of the county attorney, struck the juror's affidavit from the record and overruled the motion for new trial.

The ruling was not erroneous. The conduct of the bailiff, assuming the truth of the juror's corrected version, was not prejudicial. It falls much short of the conduct described in State v. Peirce, 178 Iowa 417, 433, 159 N. W. 1050, or in State ex rel. Patton v. Terpstra, 206 Iowa 408, 220 N. W. 357, or in State v. La Grange, 99 Iowa 10, 68 N. W. 557, cases cited by appellant.

The claim that the bailiff violated section 11497, Code of 1939, in "hollering up" to ask if they had reached a verdict and that the judge was "going home" or "going to leave" or "going home to retire" (the juror stated it in various ways) seems too technical to warrant consideration. The statute is, of course, mandatory (State v. Peirce, supra) in providing that the officer in charge of the jury "shall not suffer any communication to be made to them, or make any himself, except to ask them if they have agreed upon their verdict, unless by order of the court." But there is no showing here that the bailiff violated the spirit of the statute or even its letter. He inquired if they had reached a verdict and gave the reason for the inquiry. If it was done without order of the court, the fact does not appear. There was nothing coercive or threatening in the inquiry and nothing calculated to influence the decision of any juror.

As to the pain and suffering of the juror, his speculations as to the judge's going back to Tipton, and the possibility that the jury might be "locked up over the week-end," of course, all that is matter inhering in the verdict and incompetent to impeach the jury's findings. State v. Werling, 234 Iowa 1109, 13 N. W. 2d 318. Citation of other cases is unnecessary.

We have given the record the study that the seriousness of the alleged crime demands. Appellant's age was given in her signed statement as nineteen. She is the mother of two children.

The circumstances as revealed by the record are such as to challenge our most careful attention. We have concluded, however, that the trial was fair and the evidence such as to support the verdict. The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.