## THE STATE OF IOWA; .

DES MOINES, JUNE TERM, A. D. 1861.

In the sixteenth year of the State.

PRESENT:

HON. RALPH P. LOWE, CHIEF JUSTICE.
  "   CALEB BALDWIN,  } JUDGES.
  "   GEO. G. WRIGHT.[1] }

---

## THE STATE OF IOWA v. TOMLINSON.

1. NEW TRIALS IN CIVIL CASES. The Supreme Court may review an order of the District Court sustaining or overruling a motion for a new trial upon the ground that the verdict of the jury is against the evidence, but it will interfere only when it is made manifest that the discretion vested in the court has been abused.

2. SAME: IN CRIMINAL CASES. A new trial will be granted in a criminal action when the verdict is against the weight of evidence; and in the consideration of the evidence greater latitude is permitted than would be countenanced in civil cases.

3. RAPE. The weight of evidence offered to sustain an indictment for rape considered and discussed.

---

1. WRIGHT, J. was not in attendance at the Argument Term, at Davenport, prior to the 14th of April, and ill health during the entire term rendered it impossible for him to examine all of the opinions filed by the other judges.

VOL. XI.        26

The State of Iowa v. Tomlinson.

*Appeal from Clinton District Court.*

TUESDAY, APRIL 9.

THE defendant was tried and convicted of the crime of rape. A motion in arrest of judgment and for a new trial being overruled, the defendant appeals.

*W. E. Leffingwell* and *B. W. Poor* for the appellant.

The Supreme Court may set aside a verdict and grant a new trial in a criminal case on the ground that the verdict was against the evidence, when the court below refused the same. Whart. Am. Cr. L. 1007; *The State of Connecticut* v. *Lyon,* 12 Conn; *The State* v. *Mungo Bird,* 1 Mo. 585; *Boll's Case,* 8 Leigh; *Bedford* v. *The State,* 5 Humphrey 552; *Commonwealth* v. *Madden, et ux,* 5 Pick 429; *Copeland* v. *The State,* 7 Humph. 479.

*S. A. Rice,* Attorney General, for the State.

BALDWIN, J.—There are several questions presented by the counsel for appellant in their argument in this cause, only one of which it becomes important for us to refer to in our opinion; and that is whether the verdict of the jury was so contrary to the weight of evidence as would justify the appellate court in reviewing the discretion of the District Court in refusing to the defendant a new trial.

In civil causes the order of the District Court granting or refusing a new trial may be reviewed by the Supreme Court. *Ruble* v. *McDonald,* 7 Iowa 90; *Stewart* v. *Ewbank,* 3 Ib. 191; *Cook, et al,* v. *Sypher,* Ib. 484. But the appellate court will not interfere unless it is manifest that the discretion conferred upon the District Court has been improperly exercised. 7 Iowa, *supra; Jourdan* v. *Reed,* 1 Iowa 135; *Freeman* v. *Rich,* Ib. 504; *Humphreys* v. *Hoyt, et al,* 4 G. Greene 245. "Palpable injustice" must be made to appear or the action of the court below will be sustained. 7 Iowa 232; 6 Ib. 553.

In the cases of *Jourdan* v. *Reed, Humphreys* v. *Hoyt,* and *Freeman* v. *Rich, supra,* the right and duty of this court to reverse the ruling of the court below in refusing to grant a new trial when the verdict of the jury ·is against the weight of evidence is clearly recognized. In the case of *Jourdan* v. *Reed,* the court, in treating upon the subject, say, "that this discretion is a legal one and must be legally and properly exercised. When the mind is brought, irresistibly, to the conclusion that the verdict was not the result of a free, sound and unbiased exercise of judgment on· the testimony submitted, and that manifest injustice will result if judgment is rendered upon such verdict, it would be the right and duty of the court below to grant a new trial; and where such a case is made apparent to this court, a new trial will be ordered, though refused by the District Court.

Mr. Greenleaf says, in his work on evidence, volume 3, section 29 : " A distinction is to be noted between civil and criminal cases in respect to the degree or *quantity of evidence* necessary to justify the jury in finding the verdict for the government." In civil cases it is their duty to decide in favor of the party for whom there is a preponderance of testimony, although it be not free from reasonable doubt. In criminal cases the guilt of the accused must be fully proved. Not a mere preponderance of evidence, nor any weight of preponderant evidence is sufficient, unless it generates a full belief of the fact, to the exclusion of all reasonable doubt.

If a greater degree of evidence is required in criminal than in civil cases, is it not the duty of this court to more readily inquire whether the verdict of the jury is sustained by the evidence in the former than in the latter class of cases? We are inclined to the opinion that greater latitude should be allowed to the party claiming a new trial in this court in a criminal than in a civil cause; and all the reasoning that could apply in favor of an interference with the verdict in a civil cause would apply with still greater force to

criminal trials. "The latter are certainly the more important, affecting, as they do, personal liberty, character and perhaps life. The sole object of interfering with a verdict in any case is the prevention of injustice. As the hazards of pecuniary loss are proportionably of less consequence than the loss of reputation, liberty or life, so greater scrutiny and greater latitude in granting a new trial should be allowed in the latter than in the former." 3 Gra. & Wat. on N. T., 1227.

In the case of *Davis* v. *The State*, the Supreme Court of Tennessee said : "The rule that this court will not grant a new trial upon the facts unless the jury shall appear guilty of great rashness does not apply to criminal cases. 2 Humph. 442. Where the evidence is not sufficient to warrant the verdict, a new trial will be granted in criminal cases although it may not be such a case of rashness as would induce a like decision in a civil case." *Bedford* v. *The State*, 5 Humph. 532.

Mr. Wharton, in his treatise upon American Criminal Law, says that "a conviction clearly contrary to the weight of evidence will be set aside ; and such is more particularly the case where any of the material allegations of the indictment are unproved." More than fifty cases are cited in support of this text; and many of those thus referred to clearly demonstrate the duty of the appellate court to interfere when the verdict is against the evidence.

The bill of exceptions signed by the judge of the District Court, certifies to us all the evidence introduced upon the trial of this cause ; and after giving all due consideration to the fact that the testimony of the prosecuting witness has not the same force when reduced to writing as when delivered before the jury, and that this court can not as fully judge of the credibility of such evidence as the District Court can, where the manner and conduct of the witness have their influence in determining the truth of the statements made, yet we think that there is such a want of evi-

dence to establish the charge preferred against defendant, that we feel it our duty to grant to him a new trial.

Without undertaking to determine whether it was possible for the defendant to have completed the crime with which he is charged, taking into consideration the age, intellect, strength and experience of the prosecuting witness, provided every resistance had been made within her power in defense of her honor and chastity, we refer to some suggestions that have been made upon this subject, as not inapplicable to this case. A rape is defined to be the carnal knowledge of a female by force and against her will. "It is an accusation," says Sir Matthew Hale, "easy to be made, hard to be proved and harder to be defended by the party accused, although innocent." Metzger only allows of three cases in which the crime can be consummated: "When narcotics have been administered, when many are engaged against the female, and when a strong man attacks one who has not arrived at the age of puberty." Dr. Beck adds to these, "resistance until the helpless female faints from fatigue," and "dread of instant murder." Dr. Beck further states that the opinion of the medical faculty is very decisive against the position that a female of the years of maturity, of good health and strength can be violated against her will. ."The consummation of a rape," says Farr, "by which is meant a complete, full and entire coition, which is made without any consent or permission of the woman, seems to be *impossible*, unless some very extraordinary circumstances occur. For a woman always possesses sufficient power by drawing back her limbs and by the force of her hands to prevent the insertion of the penis, while she can keep her resolution entire." Dr. Thomas suggests that in this struggle with a healthy female of adult age, who is really anxious to preserve her chastity unsullied, the mind of the man must necessarily be so abstracted from the act itself, in overcoming the resistance offered to him and in repelling the attacks of the female upon him, that, independent of the corporeal exhaus-

tion, the state of his mind will render it utterly impossible for him even to effect that penetration which constitutes the criminal intent. See 1 Beck's Med. Jur. 165, note.

The prosecutrix, Elizabeth Linney, was a married woman, thirty-four years of age; and from all that appears in the record, a person of ordinary strength of mind and of ordinary physical ability. Her testimony, so far as it relates to the acts of defendant, stands uncorroborated. There is an entire absence of evidence of the usual marks of violence in such cases. Not a scratch or a bruise appears to have been made upon the person of the witness or of defendant. It is true the witness states that she was sick on that day; but it appears that she was up and about the house; that she conversed with the defendant out doors and in the house for some time previous to the acts charged against defendant; and that the next day she was in her usual health.

We do not propose to review the evidence in detail, and point out its insufficiency to support the charge of rape. We can not find from her statements that there was such objection interposed or such force used as to satisfy us that the coition was against her will. No remonstrances were made, no resistance offered; nor is there any reasonable excuse given for the want of either. Nor was there so much noise made as to disturb a child three years old sleeping in an adjoining room. It is true that the prosecutrix remarked to the defendant "that Linney would put him through for that;" that "some of Linney's folks were coming;" (and this appears to be all that was said,) but this does not indicate any dissent upon her part to the act itself.

Without assuming to say but that the evidence was sufficient to show that when the defendant made the assault he intended to commit a rape, yet we readily concur in the conclusion that there was such an absence of force by defendant, and so little evidence of the unwillingness of the prosecutrix, that the verdict was unsupported by the testimony.

Judgment reversed and a new trial awarded.