Day, J.
The record presents a single question, to wit: Does the evidence warrant the verdict ? The testimony establishing the circumstances of the offense is quite brief. It shows that the horses were stolen from the!pasture of the owner, on the night of Monday the 23d of May, 1870. On the Thursday following, Sheehan, Deputy U. S. Mar *244 shal for Minnesota, saw Lightfoot, in company with another, about three and one-half miles west of Albert Lea, Freeborn Co., Minnesota, driving the stolen horses to a buggy. The defendant, Woolsey, accompanied them, riding a pony, and leading a brown mustang pony. They left the main highway and followed by-roads. The deputy marshal, hearing of the larceny, pursued, and learned that they passed through Wasaca that night, about eleven or twelve o’clock. The next day, about seventy-five or eighty miles, by the route they traveled, from where he first saw Lightfoot and defendant, he was met by the sheriff of Wasaca county, with the four horses he had before seen with the defendant and Lightfoot. The horses were so jaded as scarcely to be able .to walk. The evidence does not show when or where the defendant was arrested. After his arrest he told Sheehan that the-buggy and harness were his; also, that one of the ponies belonged to him and- the other to his father. This statement proved to be true. This is all the testimony tending to connect the defendant with the crime. Unexplained, we should feel inclined to hold it sufficient to support the verdict. The possession of the stolen property, recently after the larceny, of itself raises a presumption of guilt. This presumption is much strengthened by the haste and effort to baffle pursuit, and avoid detection, evidenced by traveling at night and over unfrequented roads.
The case does not rest, however, alone upon this testimony, introduced on behalf of the State. The defendant introduced testimony tending to establish an alibi, and upon that he relies for his defense. The evidence upon this point is as follows. G. W. Garter testifies: “ I reside at Clear Lake, Cerro Gordo county, Iowa, and did in the month of May last; I know defendant; I saw defendant on the 23d of last May; I saw him in the morning and in the evening; we kept our horses in the same stable; it was on Monday or Tuesday, I think; I am positive as to *245 the day and date; I saw liim the day before this and the day after; I saw him on the 24th of May last, and on the morning of the 25th; I am also positive that defendant was in Clear Lake on the 22d of May last; he kept his horses in same barn, and I saw him every day.” C. H. Ellis testifies: “I reside at Clear Lake, Cerro Gordo county, Iowa; I am a barber; I know defendant; I know he was in Clear Lake the 22d day of May last; I shaved him; I saw him on the 23d, also, with his team, at his house; I made a memorandum of it, as he did not pay me for the shave, and I charged it to him.” G. G. Ellis testifies : “ I reside at Clear Lake, Cerro Gordo county, Iowa; was there in May last, and saw defendant there at that time; it was on Monday; I also saw him on the 24th, in the morning; I did not see him on the 25th.” Lucy Morgan testifies: “ I live at Clear Lake; I was riding with him on Sunday, the 22d of May, about 2 p.m.; I also saw him the next day about six miles from Clear Lake, at Mr. Woolsey’s house; I was at work at Mr. Jones’, about a mile from town; I quit working there the 23d of May last, and recollect it.” Myson Woolsey testifies: “I am a brother of defendant; I reside at Clear Lake; in May last I saw defendant there on the 22d day of May; we live together in the same house; I saw him there on the 23d, 24th and 25th days of May last; on the 22d he went riding.” Nothing was introduced to impeach these witnesses, or to contradict or cast discredit upon their testimony. It is almost a physical impossibility that the defendant should have been at Clear Lake at the time spoken of by these witnesses, and yet should have committed the larceny complained of. If it was on Monday evening that the witness Carter saw defendant at Clear Lake, it is barely possible that he could commit a larceny that night, in Eayette county, ninety, miles distant. If it was on Tuesday morning the witness saw him, the probability is not greater that he had committed such larceny the night *246 before. And when the testimony of the other witnesses, that defendant was in Clear Lake on both Monday and Tuesday, is considered, the probability of his connection with the larceny is still further diminished. We recognize, and give weight to the fact, that the jury and court below had the advantage of the personal presence of the witnesses, and of determining the degree of their credibility from their deportment. Still, as there was no conflict of evidence upon the point testified to by the defendant’s witnesses, it was not competent for the jury wantonly or captiously to disregard their testimony. And, while we will exercise just caution in interfering with the verdict of a jury, especially when the court below has refused to disturb it, yet a conviction clearly contrary to the weight of evidence should be set aside. See State v. Tomlinson, 11 Iowa, 401. We consider a finding that the defendant perpetrated the larceny, either in person, or in connection with Lightfoot, clearly opposed to the weight of evidence. There was no evidence to charge the defendant as accessory before the fact. The evidence does not show that, being absent, he aided or abetted the principal perpetrator of the crime, nor that he previously counseled, commanded or advised its perpetration. The only offense which it tends to establish is, that he was accessory after the fact; but for such crime he is not indicted.
The judgment of the district court is reversed, and the cause remanded for new trial.
Reversed.