## STATE OF IOWA v. JOHN PILKINGTON, Appellant.

**Attempt to Rape:** INSUFFICIENT EVIDENCE. Prosecutrix's reputation for chastity was questionable. She rode with defendant, and he attempted indecent liberties. A few days after that, she requested him to allow her to ride with him to her home, where he was starting, at night. On that ride, he asked intercourse and, finally, twice lifted her out of the buggy and had connection. Her drawers were torn on one side, and if her testimony on resistance were believed, it was the duty of the jury to find a rape. *Held*, conviction for attempt to rape should be set aside.

**Misconduct of Attorney.** The prosecutor demanded, before the jury, that a witness be held for perjury. This is not reversible error where the court said: "I will not hold him. There is a method of holding him by information if there is any ground for doing so."

*Appeal from Lucas District Court.*—HON. W. I. BABB, Judge.

### FRIDAY, OCTOBER 12, 1894.

DEFENDANT was charged with having, on the twenty-third day of February, 1893, committed a rape upon Ella Shelton, a female over thirteen years of age. He was convicted of an assault with intent to commit a rape, and moved for a new trial, on the ground that the verdict was against the evidence and contrary to law, and because of misconduct of the county attorney. This motion was overruled, and judgment of imprisonment in the penitentiary entered against him, from which he appeals, assigning as errors the overruling of said motion.—*Reversed.*

*Mitchel & Penick* for appellant.

*John Y. Stone*, attorney general, and *Thos. A. Cheshire* for the state.

GIVEN, J.—I.  New trials are granted in civil cases when "the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law."  Code, section 2837.  They are granted in criminal cases "when the verdict is contrary to law or evidence."  *Id.*, section 4489.  The rule in criminal cases is different from that applied in civil cases.  "This court, though proceeding carefully and cautiously, will interfere in criminal cases more readily than in civil. We will not, in a criminal case, support a verdict if it be against the clear weight of the evidence."  *State v. Wise*, 83 Iowa, 596, 50 N. W. Rep. 59, and cases therein cited.  Guided by this rule we inquire whether the evidence supports the verdict.  Defendant drove a common buggy carrying the mail between Chariton and Columbia, a distance of about twenty miles.  On a Wednesday afternoon, in February, 1893, Ella Shelton, a resident of Chariton, then a few months over sixteen years of age, rode with the defendant from Chariton to Columbia.  On the following Friday night, she rode with him from Columbia to Chariton, and on the way they had sexual intercourse twice.  It is upon these acts of intercourse that the charge is based.  The jury must have failed to find that the sexual intercourse was against the will of the prosecutrix, or it would have convicted of rape.  This conclusion of the jury is not complained of, and we accept it as true that the state failed to show a want of consent; indeed, such is our view of the testimony.  It does not follow, however, that the defendant may not have been guilty as found by the jury. "If, before the consent was given, it appears that defendant used such force as to evince an intention to commit a rape, the defendant may be convicted of an assault with intent to commit a rape."  *State v. Atherton*, 50 Iowa, 189; *State v. Cross*, 12 Iowa, 67.

We have the single question whether the evidence warrants the finding that the defendant assaulted Ella Shelton with intent to ravish and carnally know her, by force and against her will. It is not a question whether the defendant's conduct toward this young girl is to be condemned. There is no doubt but that his acts were with the intent and purpose of having sexual intercourse with her, and are without any justification whatever; but did he intend to accomplish his purpose by force and against her will, is the question before us. Ella Shelton, though young, was evidently a wayward and rather evil-minded girl. Her reputation for chastity was the subject of proof, and to say the least of it, showed her to be of questionable standing.

It does not appear what the previous acquaintance of these parties had been, but we infer from her statements that it was limited; nor does it appear that the defendant did anything to induce her to ride with him on either occasion. Ella's sister asked defendant to tell Ella to come home, and on his return to Columbia, Friday evening, he told her so. On his arrival that evening, Mr. Wilson, at whose house Ella was visiting, asked the defendant to go back to Chariton that night, and send a doctor, as Mrs. Wilson was sick and growing worse, which defendant consented to do, as he could take the mail then as well as in the morning. Mr. Wilson testifies that Ella asked the defendant to take her back; that defendant asked her if it was not too late for her to go, and she said she was obliged to go. It is certainly clear that the defendant did not induce her to go with him that night, and that any evil designs that he may have had must have arisen afterward. The prosecutrix testifies that on the way, on Wednesday, the defendant kept putting his arms around her, and made indecent proposals to her, and that she told him to behave. It is claimed by the defendant that she testified to their having sexual intercourse that day, but the statement upon which

that claim is based relates to what occurred on Friday night. It is to the occurrences of Friday night that we must look to determine the question under consideration. As to what occurred that night we have only the statement of Ella Shelton, somewhat disconnectedly given. We will not attempt to set out or discuss her evidence in detail, as the following substance of it will be sufficient for an understanding of the question before us: They left Columbia about 9 o'clock at night, and, after they were some miles on the way, the defendant commenced to take liberties with her person, putting his hands under her clothes. He removed the safety pin that fastened her drawers, and put it in his coat; kept asking her to have sexual intercourse with him; and at one time threw her back on the seat of the buggy. After this, he stopped alongside of the road, got out, and spread the robe on the ground. "He then took me out of the buggy, and laid me on the lap robe. After he got through, he picked me up, and put me in the buggy. * * * I fastened my drawers before I got back in the buggy." After driving four or five miles, defendant again stopped, spread the robe, lifted her from the buggy, and had sexual intercourse with her. The prosecutrix testifies that she resisted these acts all that she could; that she pushed him away with her hands; struck him; told him to behave; that she did not want to have intercourse with him; and that when he took her out of the buggy, "I hollered pretty loud." In short, the evidence shows such resistance that, if believed by the jury, they must have convicted the defendant of rape. The only circumstance corroborating the evidence of the prosecutrix as to her resistance and the use of force is that a new pair of closed drawers, that opened at the sides, which she wore at the time, and from which the defendant had taken the safety pin while in the buggy, were torn down one side, as she says, by the defendant trying to get them off. Whether it was the side from

which the pin had been taken or the other side that was torn does not appear. It is evident, however, that, though partially opened, they were in the way of having sexual intercourse, which the jury virtually found was with the consent of prosecutrix. We think the tearing of her drawers is explained upon other grounds than that the defendant intended to carnally know Ella Shelton by force and against her will. We have not mentioned all the facts, but we have examined the evidence with great care, and are led to the conclusion that it does not support the verdict. We think it fails to show that the defendant intended to carnally know Ella Shelton by force and against her will.

II.   On the trial the county attorney, in the presence of the jury, "demanded of the court that the witness Frank Wilson be held by the court for the crime of perjury, committed by said Wilson by giving false evidence in the case." The demand was untimely, even if the facts warranted the arrest of Wilson. The demand, made, as it was, in the presence of the jury, warrants the inference that it was done to have an improper influence with the jury. Counsel should studiously refrain from even giving room for such suspicions. The timely response of the court must have prevented the demand from having any influence whatever with the jury. The response of the learned judge was "that he would not hold him; that there was a method of holding him by information, if there was any ground for doing so." The county attorney had a right to claim before the jury that the witness had sworn falsely. His claim was neither approved nor denied by the court, and, therefore, was not prejudicial to the defendant, and affords no ground for reversal. For the reasons stated in the first paragraph of this opinion, the judgment of the district court is REVERSED.