STATE OF IOWA, Appellee, v. MIKE SULLIVAN, JOHN RAY
and JOE WILSON, Appellants.

**Burglary:** INSUFFICIENT EVIDENCE. A verdict of guilty in a criminal
case will not be upheld when against the clear weight of the
evidence. In this prosecution for burglary the evidence is held
insufficient to support conviction.

*Appeal from Mahaska District Court.*—HON. B. W.
PRESTON, Judge.

WEDNESDAY, OCTOBER 16, 1912.

THE defendants were jointly indicted for burglary.
There was a verdict and judgment of conviction and they
appeal.—*Reversed.*

*Dan Davis* and *McCoy & McCoy,* for appellants.

*George Cosson,* Attorney General, for the State.

EVANS, J.—It is the contention of the state that on
September 11, 1911, a powder house, located about two and
one-half miles from Oskaloosa, was broken and entered,
and that a box of dynamite was stolen therefrom. The
three defendants were discovered in a box car at the Iowa
Central Yards at Oskaloosa on the morning of October 4,
1911. They were arrested and charged with the crime.
Various circumstances were relied on as connecting them

therewith. A few days after the alleged burglary, one
Scoles found a box containing some sticks of dynamite,
apparently concealed, at a distance of about three hundred
yards from the powder house. On the morning of October
4th he saw five men in the near vicinity of the concealed
dynamite. He heard a part of their conversation which in-
dicated their character as burglars. One of them took some
or all of the sticks of dynamite contained in the box and
wrapped them in a blanket and carried them for some dis-
tance up the railroad track and laid them down and left them.
He identified the defendants as being three of the five men
he saw at such time and place. The defendants were ar-
rested about eight o'clock in the morning in a box car, which
they had apparently occupied during the night. Neither
dynamite nor weapons were found upon their persons, nor
about the car. They had a few coins of money and an
abundance of intoxicating liquor, and all were intoxicated.
They were tramps, and two of them were seriously
crippled. They all testified and gave consistent accounts
of their whereabouts on September 11th, and from such
date down to the time of their arrest. They claimed to
have come into Oskaloosa the night before, and to have
occupied the box car for their sleeping place, and denied
that they had been in the neighborhood where Scoles claimed
to have seen them on October 4th. The state's case rests
wholly upon circumstantial evidence, and the circumstances
thus put forth are of a very unsatisfactory and inconclusive
kind. To add to the difficulty, the evidence of the *corpus
delicti* is fatally weak. This was proved by the testimony
of the witness Vermillion alone. We set out herewith sub-
stantially his entire testimony, omitting objections and
rulings:

I have lived in Oskaloosa about twenty years. Own
a powder house, which is located about two and one-half
miles southwest from town. I keep dynamite caps and sport-
ing powder and mine powder in this powder house. The pow-

der house was broken into some time during the fall. The lock was broken off. I did not know until the 11th or 12th of September that it had been broken into. I made a check of the dynamite, and found a twenty-five pound box of forty percent dynamite short. I was not certain as to the check then for a long time. I had not made any check on the caps at all. There was a horse blanket in the powder house. Exhibit A and B is a part of the blanket that was in the powder house at the time. Q. What would you say as to the box? Are you then certain that was similar to the box taken out of your powder house? A. I could not say if that is the box. It is the same kind of dynamite. The box is similar to the one that was taken out. It is a twenty-five pound box. I own the powder house. It goes under the name of the Oskaloosa Powder Company. It was a Yale lock on the house at the time. I took the broken lock to Art Walls. Exhibit D, I think, is a piece of the blanket. I would not be able to identify the dynamite or any broken box that way. I could not tell forty percent from 60 percent dynamite, because I sell it all in boxes. I could identify the caps as being the same as I handled. Exhibit E is a box similar to the ones I handle. I first learned that the powder house was broken into on Monday. My teams were out there last on Friday, and the next Monday, I think it was, that Hamilton's man was out there, and he notified me that my lock was broken, and I went out myself and took two new locks.

(Cross-examination): I think it was the 11th or 12th of September that the powder house was broken open. I don't know anything about who broke open the powder house, nor anything about that. I offered a reward of $50 for the parties that broke in the house. I think both of the locks have been tampered with since I put them on after 11th or 12th of September. I couldn't state the date. Hamilton & Hamilton handle the same kind of dynamite and caps. I sell it wholesale and retail. One can get this same kind of dynamite most anywhere. I never checked up the caps. I have been off on my checking of the caps, and can't say whether I am short on caps or not. There was a twenty-five pound box of dynamite short. I send people out there to get dynamite, and wouldn't know how much they took until I made a check of it. I missed this

twenty-five pound box after my last checking. I do not know when it was taken out, or how. I do not know anything about that.

(Redirect examination): If any dynamite goes out of there, I would keep a check on it.

(Recross-examination): If the man I sent out after the dynamite did steal it, or make a mistake, I wouldn't know anything about it. I check it as it is brought by my office.

Some slight additions are made to the foregoing by appellee's amended abstract. It will be noted from the foregoing that this witness testified to nothing of his own personal knowledge that tended to prove a burglary, unless it be the fact of the discovery of the broken lock. No witness testified who professed to know anything about the condition of the building before or after the alleged burglary. The same must be said of the alleged larceny of the box of dynamite from the building. Both the entry and the larceny were assumed as a mere inference, and no competent witness was called to testify to any fact in proof thereof.

If this feature of the record could be overlooked, the question would still remain whether the circumstances proved were sufficient to connect the defendants with the burglary. Giving full credence to the evidence of Scoles (and some of it impresses us as incredible), we think it was clearly insufficient to warrant a conviction of these defendants for the alleged burglary on September 11th. It appears from the evidence of the state that considerable dynamite was found by different persons in different places a mile or two remote from each other. All of these discoveries were made after the arrest of these defendants, except the one made by Scoles. If the finding of dynamite in the month of October was evidence of the burglary of September 11th, then many persons came under the cloud. Granting that these circumstances were fairly admissible as circumstantial evidence, they were nevertheless far from

sufficient, of themselves, to make a case. We can not set out the evidence herein without prolonging this opinion to an undue length. It must be sufficient to say that we have read and reread the record with great care, and find the evidence insufficient to justify a conviction. We have frequently held that we will not support a verdict in a criminal case if it be against the clear weight of the evidence. *State v. Wise,* 83 Iowa, 596; *State v. Billings,* 81 Iowa, 99; *State v. Campbell,* 69 Iowa, 556; *State v. Moffitt,* 31 Iowa 316; *State v. Woolsey,* 30 Iowa, 251. In our opinion, the record before us presents such a case. In view of this conclusion, we need not consider other specific questions presented and argued.

The judgment of conviction must be—*Reversed.*