STATE OF IOWA, Appellee, v. CHARLIE McKENZIE, Appellant.

**MOTOR VEHICLES:** Offenses—Intoxicated Driver—Evidence—Insuf-
ficiency. A verdict of guilty of operating an automobile while in-
toxicated is not sustainable on testimony all of which tends to show
that the accused was sober while operating the car in question, and
part of which tends to show that he was intoxicated shortly *after*
the operation in question.

Headnote 1: 42 C. J. p. 1336.

*Appeal from Washington District Court.*—CHARLES A. DEWEY,
Judge.

NOVEMBER 15, 1927.

Defendant was indicted for operating an automobile upon
a public highway while in an intoxicated condition. From a
verdict of conviction and sentence thereon defendant appeals.—
*Reversed.*

*Eardley Bell, Jr.,* and *Edmund D. Morrison,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant
Attorney-general, and *A. E. Baldrige,* County Attorney, for
appellee.

ALBERT, J.—At the close of the State's case, the defendant

made a motion for a directed verdict, on the ground of insufficiency of testimony to carry the case to the jury, and this motion was renewed at the end of all the testimony. The overruling of this motion and a motion for a new trial based on the same grounds is the only question raised in the case.

Summarized, the defendant's contention is: First, that there was insufficient testimony to take the case to the jury; and second, that the verdict is clearly against the weight of the testimony.

Section 13944, Code of 1924, provides grounds for a new trial, among which are:

"(6) When the verdict is contrary to law or evidence."

Under this section we have announced the following rule: that, where the verdict is clearly against the weight of evidence, a new trial should be granted. *State v. Reinheimer,* 109 Iowa 624; *State v. Sullivan,* 156 Iowa 603; *State v. Saling,* 177 Iowa 552; *State v. Carson,* 185 Iowa 568.

This court will interfere more readily with a verdict because contrary to the weight of evidence in a criminal case than in a civil case. *State v. Reinheimer,* supra; *State v. Tomlinson,* 11 Iowa 401; *State v. Wise,* 83 Iowa 596; *State v. Beasley,* 84 Iowa 83; *State v. Pilkington,* 92 Iowa 92. We have further said in civil cases that, where a verdict is clearly against manifest justice, and contrary to the evidence in the case, it is the duty of the trial court to unhesitatingly set it aside. *Fawcett v. Woods,* 5 Iowa 400; *Smith v. Williams,* 23 Iowa 28; *Scott v. Morse,* 54 Iowa 732; *Baldwin v. St. Louis, Keokuk & N. W. R. Co.,* 63 Iowa 210. To meet the above pronouncement, the appellee cites *State v. Kendall,* 200 Iowa 483; *State v. Giles,* 200 Iowa 1232. In the *Kendall* case, the state introduced direct testimony from various witnesses as to the demeanor and conduct of the defendant, and these witnesses also testified that in their opinion the defendant was intoxicated. This exact condition existed in the *Giles* case above cited. In both cases we said that the question of the condition of the defendant was a disputed question for the jury, and the court would not interfere.

Turning now to the instant case, we find the following condition of the record: One Walter Lemley was night marshal of the town of Kalona, and on October 10, 1926, after the supper hour, and while on his beat, he found one Anthony Chapek on

the streets in an intoxicated condition. He met the defendant, Charles McKenzie, a resident of the town, and told McKenzie that Chapek was intoxicated and liable to get into trouble, and that he wished that he (McKenzie) would take Chapek to his home, which was in the town of Richmond, about three miles from Kalona. Pursuant to this conversation, McKenzie got his automobile, and, taking Chapek with him, started for Richmond. It was a dark and foggy night, about 9 P. M. It appears that the road on which they were traveling in a southerly direction had piles of gravel along the east side thereof, placed there for the purpose of being spread on the road. The evidence shows that, on the right side of the road, as McKenzie was driving south, there was a deep ditch. After they had driven on this road for about half a mile, they met one Kern, coming from the opposite direction, and there was a collision between the cars. The road was necessarily narrowed by reason of the gravel piled on the east side thereof. The cars approached each other very slowly, and McKenzie says that the lights of the Kern car so blinded him that he was unable to determine its exact location. After the collision, the Kern car was able to proceed to Kalona on its own power. The McKenzie car was so badly injured that it was abandoned, and McKenzie and Chapek started to walk back to Kalona, but were picked up by another car. When they got back to town, Chapek and McKenzie went to the hotel, where McKenzie had a room. About an hour after the accident, the night marshal, Kern, and M. I. Cain, mayor of the town, went to McKenzie's room, and the question of payment to Kern for damages to his car was discussed. Chapek said he would pay, but McKenzie said he was not to blame, and would not pay.

Up to this point, the record is wholly silent as to any evidence that McKenzie was intoxicated or had been drinking. Both the mayor and the marshal say that McKenzie was intoxicated at the time this interview occurred in the hotel. Two witnesses testify that Kern, when he reached town, was seen by them in a restaurant, and that he was intoxicated. When asked whether or not he had been drinking that night, he said, "Not that anybody knows;" but these witnesses say that, when in the restaurant, he drank three cups of coffee, explaining that he wanted it, and "wanted to get out of there and get sobered

up, because he expected the mayor, Cain, to be down soon." This testimony Kern does not deny.

McKenzie testified that, after he came back from the scene of the accident and reached the hotel, he went down to the basement, and while fixing the furnace, took a drink of liquor. The town marshal testified that, when he first met McKenzie, he talked with him for ten minutes, and observed nothing unusual about McKenzie at the time. Kern at no place testifies that McKenzie was intoxicated at the time of the accident. He says:

"I was right up close to Mr. McKenzie and talked with him. I was within a few feet of him. I did not smell any liquor."

Stutsman, another witness, testifies that he saw McKenzie and Chapek when they were coming back to town from the accident, and says, as to McKenzie:

"I wouldn't see any different walk in him from any other time. I observed no evidence of intoxication about Mr. McKenzie."

McKenzie frankly told the marshal that he had been drinking a little after he got back from the accident. Another fragment of testimony bearing on this question was a piece of hearsay testimony that, when the cars came together, Kern said to McKenzie that "he [McKenzie] was drunk;" but Kern does not so testify as a witness in the case.

While this law providing for punishment for one operating an automobile on a public highway while intoxicated is very salutary, and needs vigorous application, owing to the large number of automobiles and the large volume of traffic on the public highways, and we are disposed to uphold it, to the end that the general traveling public may be protected against reckless and careless driving by persons in an intoxicated condition, at the same time we do not feel that a man should be branded as a felon under facts such as are developed in this case. The real question was, What was the condition of McKenzie at the time this accident occurred? McKenzie was a man past 70 years of age, engaged in the laudable business of trying to take Chapek home, so that he would not get into trouble, the same being done at the solicitation of the city marshal.

We find, under this record, that an injustice has been done the defendant, and that the weight of the evidence in the case

is with the defendant. Further than this, the evidence introduced in this case was not sufficient to take this question to the jury.—*Reversed.*

EVANS, C. J., and FAVILLE, DE GRAFF, and MORLING, JJ., concur.