STATE OF IOWA, Appellee, v. ADOLPH CARLSON, Appellant.

No. 43857.

DECEMBER 14, 1937.

John H. Mitchell, Attorney General, Henry J. Roelofs, Spec. Asst. Attorney General, and J. W. Pattie, County Attorney, for appellee.

E. N. Farber and F. E. Northup, for appellant.

HAMILTON, C. J.—The facts and circumstances immediately preceding and leading up to the arrest of the defendant are as follows:

Linn Street runs east and west, and Sixth Street runs north and south in the city of Marshalltown, Iowa. Both streets are paved. The paving is quite narrow, 24 feet between the curbs on Linn Street as it proceeds east of Sixth Street. The pavement on Sixth Street is 22 feet and one inch between curbs as it proceeds south of Linn Street.

On June 14, 1935, about six o'clock p. m., defendant while driving west on Linn Street approached the intersection of these two streets, intending to make a left turn from Linn Street south into Sixth Street. There were two cars parked on the west side of Sixth Street just south of the intersection, and as defendant drove into the intersection he saw a car approaching him from the south. He stated that he was afraid there wasn't room for him to pass between the parked cars and the approaching car, and to avoid the collision with the approaching car, instead of turning left, he drove behind the parked cars over the curb line onto the parking and into the front yard of what is known in the record as the "Robbins residence," situated on the southwest corner of this intersection, across the walk leading from this house to the curb line, turning back to his left onto the pavement in front of these two parked cars where he stopped. At this particular time there was a small child sitting on top of a toy automobile which was on this walk leading from the Robbins residence to the street, and apparently some part of the defendant's car came in contact with this toy automobile and the child was thrown into the air onto the ground. Some of the spectators, seeing the car off the highway and in close proximity to this child and seeing the child in the air, assumed that the child had been struck or run over and injured. There was considerable commotion and excitement. The child was picked up and rushed to a neighbor's house across the street. A doctor was called; police were notified of the accident.

Shortly thereafter three policemen arrived on the scene and the defendant was taken to the police station. Before the police arrived the defendant got out of his car; had some controversy with one of the ladies present as to his condition about whether he was intoxicated or not. The key was taken from his car so he couldn't drive it any farther. After a little while he walked into the home where the child was being cared for and where the doctor was making an examination of the child to inquire about the child's condition, and while in there the doctor said to him in substance: "Adolph, you are a friend of mine, but you have been drinking too much to be driving a car." The defendant protested that he was not intoxicated and that he would get his own doctors to examine him. There was evidence from some of the spectators that he was unsteady on his feet, that his eyes were glassy and his face flushed, and that he was perspiring freely. One witness testified that she said to him while he was still seated in his car: "Man, you're drunk," and that he replied, "Yes, lady." He, of course, denies this. All three of the policemen testified that he was to some extent intoxicated when they saw him immediately after the accident, and the doctor who was there immediately after the accident and examined the child and talked with the defendant also testified that he was intoxicated. After he was taken to the police station defendant called three physicians. This was about 45 minutes after the accident. They all examined him and applied various scientific tests for the purpose of ascertaining whether or not he was intoxicated, and his reactions were all negative, and these three doctors all testified emphatically that at that time the defendant was not intoxicated, and that in their opinion he could not have been intoxicated at the time of the accident. One of the doctors did modify his opinion by saying:

"It is true that if one is mildly intoxicated, shock and accusation of an offense and being placed in the custody of an officer would have the effect of sobering."

■■■ Counsel for defendant, in a very forceful and rhetorical argument, ask the court to make use of its power to right what they insist is a manifest miscarriage of justice on the part of the jury. It is contended that the evidence not only wholly fails to show that the defendant was intoxicated, but on the contrary shows positively that he was sober, and that since the

verdict is against the clear weight of the evidence this court should interfere and grant a new trial. Because of the earnestness with which the matter has been presented to us, we have scrutinized this record very carefully and reach the conclusion that the evidence is in such sharp conflict on this question of intoxication that it was largely a question of the credibility of the witnesses and the weight to be given to their testimony and this is a matter peculiarly for the jury. It may be in this instance the jury has made a wrong decision. If so, the responsibility is theirs. It does not rest upon the court. It would serve no purpose to set out the evidence, and we refrain from doing so.

■■■ It is true that this court, in State v. Wise, 83 Iowa 596, 599, 50 N. W. 59, 60; made the following pronouncement:

"This court, though proceeding carefully and cautiously, will interfere in criminal cases more readily than in civil. We will not in a criminal case support a verdict if it be against the clear weight of the evidence."

But this case does not fall within this rule. We think the facts in the instant case bring it within the rule announced in State v. McKenzie, 204 Iowa 833, 834, 216 N. W. 29, 30, wherein we said:

"Section 13944, Code of 1924, provides grounds for a new trial, among which are:

" ' (6) When the verdict is contrary to law or evidence.'

"Under this section we have announced the following rule: that, where the verdict is clearly against the weight of evidence, a new trial should be granted. State v. Reinheimer, 109 Iowa 624, 80 N. W. 669; State v. Sullivan, 156 Iowa 603, 137 N. W. 918; State v. Saling, 177 Iowa 552, 159 N. W. 255; State v. Carson, 185 Iowa 568, 170 N. W. 781.

"This court will interfere more readily with a verdict because contrary to the weight of evidence in a criminal case than in a civil case. State v. Reinheimer, supra; State v. Tomlinson, 11 Iowa 401; State v. Wise, 83 Iowa 596, 50 N. W. 59; State v. Beasley, 84 Iowa 83, 50 N. W. 570; State v. Pilkington, 92 Iowa 92, 60 N. W. 502. We have further said in civil cases that, where a verdict is clearly against manifest justice, and contrary to the evidence in the case, it is the duty of the trial court to

unhesitatingly set it aside. Fawcett v. Woods, 5 Iowa 400; Smith v. Williams, 23 Iowa 28; Scott v. Morse, 54 Iowa 732, 6 N. W. 68, 7 N. W. 15; Baldwin v. St. Louis, Keokuk & N. W. R. Co., 63 Iowa 210, 18 N. W. 884. To meet the above pronouncement, the appellee cites State v. Kendall, 200 Iowa 483, 203 N. W. 806; State v. Giles, 200 Iowa 1232, 206 N. W. 133, 42 A. L. R. 1496. In the Kendall case, the state introduced direct testimony from various witnesses as to the demeanor and conduct of the defendant, and these witnesses also testified that in their opinion the defendant was intoxicated. This exact condition existed in the Giles case above cited. In both cases we said that the question of the condition of the defendant was a disputed question for the jury, and the court would not interfere.''

 We have here a case where, with the possible exception of two witnesses, all of the persons, including a physician and three policemen, who saw and talked with defendant at the time of the accident and who observed his appearance and manner, testified that he was intoxicated, at least to some extent. Then there are the physical facts presented: The defendant driving over the curb into the parking and over the sidewalk into the front lawn of this residence; his statement at and immediately after the accident that they should keep their children out of the street, when the children were in the front yard; the fact that he could have proceeded on west on Linn Street instead of driving up onto the curb; the fact that he himself admitted that he had been drinking beer just before the accident. He said: ''I had *about* two small glasses of beer after I came in from the farm, six ounce glasses. They were close together. That was after five o'clock in the evening and I started to drive my car from that place out to Sixth Street in about half an hour or a little more. I didn't feel any effect from drinking those two glasses of beer and I was not intoxicated in any manner or form.''

The defendant's good moral character was put in issue by himself, and the state in rebuttal showed by the judge of the municipal court and the chief of police of Marshalltown that the defendant's general reputation for sobriety in the community was not good.

 On many points at issue the evidence is in sharp conflict, and it must be conceded that the doctor who was called to

examine the child, and who really instigated the prosecution showed considerable feeling and interest in the case, but of course this was a matter for the jury, not for the court.

■■■ "We have endeavored to reconcile the conflicting testimony, and we think the fairest and most reasonable view is to say that the defendant had been drinking, that he was quite probably mildly intoxicated, that his judgment was somewhat impaired thereby, which accounted for his rather unusual conduct, that the excitement and shock of being accused of striking this little child, and his arrest which followed, had a decided effect in sobering him up, so that by the time he was examined by the other physicians in the police station three-quarters of an hour later there was no noticeable evidence of intoxication. This view is warranted by the entire record, and is one which the jury might have taken in attempting to reconcile the conflicting testimony. This disposes of the main contention of the appellant.

■■■ There are some nineteen separate assignments of error. Most of them relate to the rulings of the court in sustaining or overruling objections to questions propounded to witnesses. We think in every instance the matters inquired about were fully shown, and any error in this regard would be without prejudice. At one point in the examination of one of the witnesses the trial court on his own motion called attention to the fact that the questions were very leading, and made the statement that while opposing counsel was not objecting, the court did object. Complaint is made and the charge of misconduct lodged against the trial court in making this statement. There was nothing in the court's remark indicating his view with reference to the weight of the testimony; it only related to the manner of the procedure. The matter inquired about had already been fully covered and was more or less in the nature of repetition. Perhaps the court should refrain from making even a statement of this kind on his own motion. However, some latitude must be allowed to a trial court in supervising the conducting of the procedural matters and matters of this kind. We are satisfied, however, that no prejudice could have resulted from this statement of the trial court.

■■■ There is also complaint with reference to the giving of certain instructions and the overruling of defendant's motion for a new trial. We think the case was fully covered by the

1268

court's instructions, and the defendant asked for no elaboration and is not in a position to complain. Apparently no attempt was made to follow the rules of this court in the preparation of the brief and argument. However, the state raised no question as to this matter, and we have therefore carefully read and considered each and every proposition urged, and for the most part there is no merit in the contentions of the appellant. There are some rulings of the court in rejecting testimony which, standing alone, might be considered error, but on examination of the entire record it is revealed that in some manner the alleged error was cured and resulted in no prejudice. We are satisfied the defendant was not deprived of the benefit of any competent testimony or denied any legal right, and that the trial court committed no reversible error, and plainly instructed the jury on the simple issues to be tried, and despite the enthusiastic protests of defendant's counsel to the contrary, we are unable to find anything to sustain the charge that the verdict was the result of passion and prejudice.

The case is therefore accordingly affirmed.—Affirmed.

ANDERSON, SAGER, DONEGAN, RICHARDS, and KINTZINGER, JJ., concur.

STIGER, J., takes no part.