STATE OF IOWA, appellee, v. KEITH REGISTER, appellant.

No. 50381.

JANUARY 9, 1962.

Floyd V. Nichols, of Albert Lea, Minnesota, and Lewis H. Jordan, of Winterset, for appellant.

Evan L. Hultman, Attorney General, and Emery L. Goodenberger, County Attorney of Madison County, for appellee.

THORNTON, J.—Defendant was convicted of larceny of a 1924 Model T Ford touring car top complete with bows and sockets having a value in excess of $20. Section 709.1, Code of Iowa, 1958. He appeals, urging various grounds for reversal. As a reversal is required we will discuss only such matters as are likely to arise on a new trial, sufficiency of the evidence, instructions and a communication between the trial court and the jury foreman.

I.   The evidence shows defendant purchased a 1923 Model T Ford touring car for $85 from Eldon Grulke at an auction sale held at Grulke's home in Winterset on June 4, 1960. On June 9, 1960, defendant, accompanied by Mr. Charles R. Daughen-

baugh and Mr. Wm. V. Kincaid, went to Winterset with a truck and trailer to haul the 1923 Model T to his home in Alden, Minnesota. Mr. Kincaid testified for the State that they loaded the 1923 Model T and drove to a filling station to pay for the Model T and inquire about an antique bathtub they were to haul for another; they returned to the Grulke place to locate and load the bathtub; after the bathtub had been loaded defendant said, " 'Well, I might as well get my top.' "; defendant then walked onto the lot and while Mr. Daughenbaugh and he were securing the car previously loaded, defendant came back carrying the top and put it in the back of the truck. On the way home Mr. Kincaid testified there was a conversation between defendant and him wherein he was led to believe the top was bought and paid for. He also testified defendant offered him money to change his story.

.Defendant testified that at the time they first arrived to pick up the Model T the top was sitting in between the seats of the Model T he purchased; that Mr. Kincaid asked him about the top and he told him it was not in the car when he purchased it. Mr. Kincaid said, " 'Well, it don't look like it is any good. Do you need it? Have you got any use for it? I'll throw it in,' " and Mr. Kincaid threw it in the truck; that this happened on their first trip to the Grulke home that day and not when they returned to pick up the bathtub. He put the top in a shed when he got home and he has made no use of it and had no use for it. He produced the top at the trial. Mr. Daughenbaugh corroborated defendant's testimony.

Mr. Kincaid was both impeached and accredited by reputation evidence for honesty, truth and veracity.

Mr. Grulke, the owner of the top, testified that he left his home, the scene of the auction sale, June 9th about 10 a.m. and that at that time the top in question was on a 1924 Model T owned by him, before he left he let the top down and folded it up and took a canvas and covered and wired it down so the wind would not blow off the canvas. On his return June 13th the top was missing. He testified to the condition of the top and that its value was around $125.

A deputy sheriff testified he overheard defendant being questioned in the sheriff's office; that defendant at first stated he did not take the top but later changed his story and stated he did, it was in the back seat when he came for his car.

If Mr. Kincaid's story is believed it is substantial evidence beyond a reasonable doubt of larceny of the top, bows and sockets. The testimony is simply, he saw defendant walk onto the Grulke lot and come back with a top. Mr. Grulke's testimony shows he, Grulke, and not defendant, owned the top and there was no excuse for defendant thinking he had a right to take it. There is nothing in the testimony to make this impossible. This evidence, together with the contradictions shown by defendant's evidence, presents a jury question. The act itself is evidence of criminal intent. State v. Sauerbry, 233 Iowa 1076, 10 N.W.2d 544. Defendant does not actually make a claim of purchasing the top or of ownership. His claim is, he thought it was something Grulke wanted to get rid of and that he (defendant) did not, but Kincaid did put the top in the truck. As stated in State v. Poffenbarger, 247 Iowa 552, 555, 74 N.W.2d 585, 587, "This is simply a case of conflicting evidence and the verdict based thereon is binding upon us."

II. Defendant complains most vigorously that on the question of value the verdict is not based on competent evidence and is against the weight of the evidence. From the evidence there is no question but all witnesses on value considered the top as being an antique top for an antique car. Mr. Grulke, the owner of the top, testified to the type of top and its condition, to the various antique car clubs to which he belongs and the publications of these clubs to which he subscribed, these publications list for sale antique cars and car parts. Also that his sideline is collecting antique cars and he has been so engaged for ten years, and that he was familiar with the general line of antique car parts and prices. He testified, over objection that no proper foundation was laid, the reasonable market value would be around $125, and the value of the entire 1924 Model T of which the top was a part was $500. On cross-examination he testified he would not pay the prices shown in the publica-

tions, they were highly inflated, and that his estimate of value was based on his personal opinion and not on any sales he had observed. Two other value witnesses testified for the State. Each had been interested in antique cars as a hobby for eight or nine years. They subscribed to publications of antique car clubs and were familiar with the prices shown in these publications. From the testimony of each it is clear there is no market for antique parts such as there is for new parts on a modern car. They showed a familiarity with the Grulke top and its condition. Each had attended sales of antique cars in Iowa and other states. Their testimony as to value ranged from $40 to $80. One testified if he needed it he would pay $75 to $80, if he were buying as a speculation for resale he would pay $40 to $45. The defendant and two others testified for the defense that the top was in poor condition and its value not more than $5. These men had been interested in antique cars and car parts for from five to ten years and were familiar with the same publications as the State's witnesses and they had attended sales of antique parts and bought and sold antique car tops. Their description of the condition of the top is that it is in bad shape and does not have enough original material to give it antique value. The top was placed in evidence and certified as an exhibit to this court. From the oral evidence and appearance of the top we cannot say as a matter of law it had no value nor that the value did not exceed $20, but the jury could have.

The witnesses for the State were competent. Mr. Grulke was the owner. Ruth v. O'Neill, 245 Iowa 1158, 1175, 66 N.W. 2d 44, and citations; and State v. Hathaway, 100 Iowa 225, 226, 69 N.W. 449. Mr. Grulke and the other State witnesses showed a general knowledge of antique cars and parts such as the top and prices listed for such in the trade publications as well as the sales of antique cars in Iowa and the Midwest, but not of tops. Their testimony showed reasonable experience in the field and knowledge of the particular item. There is no market value in the usual sense. Value would depend on demand and availability and condition of the particular item. State v. Strum,

184 Iowa 1165, 1167–1170, 169 N.W. 373; and State v. Lewis, 144 Iowa 483, 123 N.W. 168.

III. The jury returned a verdict wherein they found the value to be $23. Is this verdict as to value clearly against the weight of the evidence? In dollars the jury approximately split the difference between the State's lowest value of $40 and defendant's highest value of $5. Defendant's claim is here based largely on the difference in qualifications of the respective witnesses and the condition of the top as it appeared and as described by the witnesses. The truth of the statements of each witness as to his qualifications is a jury question. The witnesses were describing a top for a 1924 car, it would hardly be a new top, the description could vary from witness to witness. The State's witnesses described the top as being in better condition than did defense witnesses. That it was old cannot be denied. But there is nothing here which can be singled out which convinces us the verdict as to value was against the clear weight of the evidence as in the authorities cited by defendant: State v. French, 240 Iowa 1, 35 N.W.2d 1; State v. Thompson, 239 Iowa 907, 33 N.W.2d 13 (see dissenting opinion); and State v. McKenzie, 204 Iowa 833, 216 N.W. 29. The conflict of testimony here and our view of it corresponds with the case of State v. Carlson, 224 Iowa 1262, 276 N.W. 770, cited by defendant. We cannot sustain defendant's position.

IV. Defendant complains of Instructions Nos. 8 and 10 because in No. 8 the court stated, "* * *, if you find that the defendant took said property * * *, knowing that it was not his own * * *, and appropriated said property to his own use, such taking is a *felonious* taking within the meaning of the law, * * *." (Emphasis added.) And in No. 10 the court instructed, "* * * An act is feloniously done when it is unlawfully committed, and when it is committed under such circumstances as to render it punishable as a felony." His complaint is these instructions confused and misled the jury and preclude a finding defendant was guilty of petit larceny. He urges instructions are to be read as a whole and cites State v. Debner, 205 Iowa 25, 30, 215 N.W. 721, 724. We have carefully considered all of the other instructions and do not find the words "felon-

iously" or "felony" used. Nor are "petit larceny" or "grand larceny" used. The jury was simply instructed to determine the taking, the ownership, value, and intent. They were given two forms of verdict, one, that defendant was guilty of larceny and to fix the value of the property; the other, not guilty. The definition is accurate. The use of the term "feloniously" is unnecessary. Section 773.14, Code of Iowa, 1958. These instructions standing alone do not constitute reversible error.

V. After the case had been submitted to the jury, the foreman of the jury, Mr. R. D. Wilson, accompanied by the bailiff, appeared alone at the judge's chambers and stated the other jurors and he were confused on the issue of value and the jurors had in mind that if the value of the property was in excess of $20 the punishment would be greater than if the value of said property was less than $20. He then requested the court for instruction regarding what the effect would be of a finding that the defendant was guilty of larceny and the value of the property was $20. The court then read the following from section 709.2, Code of Iowa, 1958: "When the value of the property stolen exceeds twenty dollars." No more of the statute was read to the foreman. He was the only juror present. The above appears in the bill of exceptions certified by the trial court.

In support of his motion for a new trial defendant attached the affidavits of three jurors, Mr. Douglas Busch, Mrs. Coy Miller and Mr. George L. Parker. In each affidavit the jurors stated it was their understanding that a finding of value of less than $20 would amount to a finding of not guilty. The affidavits do not refer to the statement read to the foreman. Insofar as these affidavits refer to the affiants' misunderstanding of the instructions, or express their individual views of the law, they cannot be considered. Such matters inhere in the verdict. State v. Hill, 239 Iowa 675, 683, 684, 32 N.W.2d 398, 402, 403.

In its ruling on the motion for a new trial the trial court says the inquiry by the foreman would indicate the jury was around $20 for a long time and shortly after he came to

the judge's quarters they returned with the verdict of $23. The trial court held the excerpt read to the foreman could not in any way mislead the jury because the same language was before the jury in the instructions. In the statement of the indictment in the instructions the following appears: "* * * having a value in excess of $20." This is proper in the indictment and the statement thereof in the instructions. Section 773.34, Code of Iowa, 1958.

Defendant takes the position the reading of the partial sentence from section 709.2 constitutes giving an additional instruction to the jury and the same should be in writing without oral explanation or qualification, section 780.9, Code of Iowa, 1958, and he must be present, section 777.19, Code of Iowa, 1958. And where the court has a private communication with a juror a new trial should be granted where it appears prejudice resulted or could have resulted. That it is reversible error to give an instruction on an issue that is not full, fair and correct.

The State's position is, the communication is not reversible error where the information given was the same as contained in the original charge.

The first inquiry is, did the excerpt read from section 709.2 constitute an additional instruction or an oral explanation, or is it merely a repetition of information in the original charge?

The language claimed to be repeated is contained in the statement of the indictment, it is, "* * * defendant, Keith Register, did take, steal and carry away * * * touring car top complete with bows and sockets * * * *having a value in excess of $20.00.*" (Emphasis added.) The italicized portion of the statement is claimed to be repeated in the court's answer to the foreman's inquiry of what the effect would be of a finding the defendant was guilty of larceny and the value of the property was $20.

We are here considering an answer given by the trial court to the jury foreman, one the foreman would be expected to repeat to his fellow jurors for their guidance. This is not a

situation as in State v. Mullenix, 212 Iowa 1043, 237 N.W. 483, where, in the courtroom, in the presence of defendant, his counsel, and the county attorney, the court politely but firmly refused to instruct the jury further and referred the jury to the instructions given. Nor is it a verdict-urging instruction as in State v. Slater, 242 Iowa 958, 48 N.W.2d 877, where after eight hours deliberation the jury was called into court in the presence of defendant and his counsel and the court orally urged the jury to agree and directed them to retire and continue their deliberations.

Section 784.2, Code of Iowa, 1958, provides:

"After the jury has retired for deliberation, if there be any disagreement as to any part of the testimony, or if it desires to be informed on any point of law arising in the cause, it must require the officer to conduct it into court, and, upon its being brought in, the information required must be given as provided by law, in the presence of or after oral notice to the county attorney and defendant's counsel."

In Burton v. Neill, 140 Iowa 141, 145, 118 N.W. 302, 303, 17 Ann. Cas. 532, quoted with approval in State v. Slater, 242 Iowa 958, 962, 48 N.W.2d 877, 879, this court, in passing on the civil counterpart of section 784.2, then section 3720, Code of Iowa, 1897, now rule 197, Rules of Civil Procedure, stated:

"'* * * it is quite uniformly held that the instructions which must be in writing under statutory requirements are only expressions of the principles of the law applicable to the case, or some branch or phase of the case, which the jury are bound to apply in order to render a verdict establishing the rights of the parties in accordance with the facts proven. * * * 'That general directions to the jurors as to their duty, not having any bearing upon the evidence which they are to consider and the law applicable thereto, are not instructions such as are required to be in writing under statutory provisions is illustrated by many cases.' (Citing authorities.)"

In Hrovat v. Cleveland Ry. Co., 125 Ohio St. 67, 180 N.E. 549, 84 A. L. R. 215, a civil action for damages, the Supreme Court of Ohio held an oral message given by the court to the

504

bailiff and by him relayed to the jury relating to the form of the verdict constituted an instruction on a point of law and should have been given in the presence of or after notice to the parties or their counsel under the provisions of a civil statute similar to our section 784.2, Code of Iowa, 1958.

The Criminal Court of Appeals of Oklahoma, in considering a statute similar to section 784.2, requires all such communications shall be public, and in the presence of the parties or their counsel. Ladd v. State, 89 Okla. Cr. 294, 207 P.2d 350.

The answer given by the court in response to the foreman's inquiry should be given the meaning most likely to be taken by the jury, resolving doubts, if any, in favor of the defendant. The inquiry related to a verdict of guilty with the value fixed at $20. The foreman must have been asking if that would amount to a conviction, or was it possible for them to return such a verdict. Either is an inquiry relating to a point of law applicable to the case. Any answer given to the inquiry would involve a question of law, not a direction as to the duties of the jury unrelated to the evidence. It would not have been improper to refuse to answer. The answer given, "When the value of the property stolen exceeds $20", is susceptible to the interpretation the value must exceed $20 before a conviction can be sustained. So construed the answer amounts to an instruction and is erroneous. Of course the defendant could have been convicted of petit larceny if the value of the property was found to be $20 or less. Section 709.2, Code of Iowa, 1958. Though the affidavits filed do not touch on the report of the foreman to the other jurors, we can hardly assume none was made. In State v. Wilcoxen, 200 Iowa 1250, 1252, 206 N.W. 260, we held, under section 13806, Code of Iowa, 1924, now section 777.19, Code of Iowa, 1958, the defendant was entitled to be present when additional instructions were given and the failure to have him present is reversible error. In State v. Harding, 81 Iowa 599, 47 N.W. 877, an oral explanation of instructions, not reduced to writing until a verdict had actually been reached, was held to be reversible error.

■ Private communications between the trial court and jurors are universally condemned. Where the record affirma-

tively shows the communication had no tendency to influence the verdict a reversal is not required. If the record shows affirmatively defendant has been prejudiced there would be reversible error; likewise where the record is silent as to the possibility of prejudice, it would be presumed to be so and a new trial should be granted. State v. Schifsky, 243 Minn. 533, 69 N.W.2d 89, 96, 97, and citations; State v. Auld, 2 N.J. 426, 67 A.2d 175, 178; People v. Tilley, 411 Ill. 473, 104 N.E.2d 499, 502; State v. Taylor, 336 S.W.2d 495 (Mo. 1960); State v. McGlade, 165 Kan. 425, 196 P.2d 173; Smith v. Commonwealth, 321 S.W.2d 786 (Ky. 1959); Deming v. State, 235 Ind. 282, 133 N.E.2d 51; State v. Burnetts, 80 Ariz. 208, 295 P.2d 377; Ware v. State, 218 Miss. 173, 65 So. 2d 236; LaGuardia v. State, 190 Md. 450, 58 A.2d 913; and annotation, 41 A. L. R.2d 266–268. It can hardly be said the record here affirmatively shows the communication had no tendency to influence the verdict. The answer given could reasonably be expected to influence the verdict to the prejudice of the defendant. A new trial is required.

VI. For the reasons pointed out in Division V the judgment of the trial court is reversed and the case is remanded for a new trial.—Reversed and remanded.

All JUSTICES concur except LARSON, J., dissenting, and BLISS, J., not sitting.